*Tuesday,*
*December*
*20th.*

CRAMOND and others, Executors of CAY surviving partner of CLOW, *against* The President, Directors and Company of the Bank of the United States.

A. is indebt-
ed to B. and
C. partners
in trade who
issue a fo-
reign attach-
ment against
his effects in
the hands of
D. *After the
death* of B.
and C.

THIS was a *scire facias* upon a judgment obtained in *September* 1801, against the defendants as garnishees in a foreign attachment against *James Brown;* and the following case was stated for the Court's opinion:

" On the 19th of *August* 1793, *David Cay* and *Andrew Clow*, " who then carried on business under the firm of *Andrew Clow*

the executors of C. who was surviving partner, obtain judgment against the defendant and the garnishee. B. and C. were the indorsers of a note which was discounted by D. and which fell due after their death and was protested for nonpayment. The debt to D. by B. and C. cannot be set off against the debt due by D. as garnishee of A. to C.'s executors. A.'s debt upon the death of B. and C. became vested in their creditors generally, whose rights could not be changed by any subsequent proceedings between the executors and garnishee.

1803.

CRAMOND
v.
Bank U. S.

" and company, indorsed a note drawn by *Henry Darrach,*
" bearing that date for the sum of 852 dolls. 88 cents, which
" note was discounted by the defendants, and the amount paid
" to the indorsers. Before the note became due the drawer and
" indorsers died, and notice of nonpayment was duly given to
" the executors of the surviving partner *David Cay.*"

" On the 11th *April* 1793, *Andrew Clow* and *David Cay*
" laid a foreign attachment on the property of a certain *James*
" *Brown,* in the hands of the defendants; and judgment was
" obtained thereon on the 14th *June* 1794, in the names of the
" present plaintiffs as executors of *David Cay* surviving partner
" &c. A writ of inquiry was issued and the sum of 25,543*l.* 2*s.*
" 3*d.* was found due to the plaintiffs, upon which there was final
" judgment. A *scire facias* then issued against the defendants
" as garnishees returnable to *September* Term 1797, and upon
" the 10th *September* 1801, a verdict was found for the plain-
" tiffs for 3354 dolls., and on the same day a judgment *nisi.*"

" The defendants as garnishees of *James Brown* are in pos-
" session of thirteen shares of bank stock, and of the dividends
" thereon arising and accruing since the 1st *July* 1801, which
" are subject to this attachment. They have received payment
" of 284 dolls. 27 cents, being a dividend of the estate of *Henry*
" *Darrach* the drawer of said note."

" The question for the opinion of the court is, whether the
" defendants in this action are entitled to set off against the
" demand of the plaintiffs in this action the balance due on the
" said note, with interest."

It was argued by *E. Tilghman* and *Ingersoll* for the plain-
tiffs, and by *Rawle* and *Lewis* for the defendants.

For the plaintiffs it was contended that by the death of *Cay*
surviving partner of *Clow,* the debt due by *Brown* to *Clow* and
*Cay* vested in the executors of the surviving partner for the
interest of the creditors generally; among whom the bank could
come in only *pro rata* according to the quality of their debt.
*Clow* and *Cay* died before the note with their indorsement fell
due, before judgment against the garnishee, and therefore
before there subsisted between them and the bank any debts
which could give rise to the question of set-off. But at their
death all their property both goods and credits, and among
others the right to *Brown's* money, became assets in the plain-

tiffs' hands, bound by our act of distributions to flow in particular channels to the creditors, and not subject to any change. If the claim of the defendants is allowed, the rights of the creditors are so far devested, and the bank, a simple contract creditor, will take precedence of even higher debts.

But further, the question of set-off cannot occur where there is no mutuality of debt between the parties. The claim by the plaintiffs is not of a debt due by the defendants *to them*, but to *James Brown;* and the object of the defendants is not to defalcate a debt due to them by *James Brown*, but by the *plaintiffs;* of course the set-off has no aspect toward the debt which it would diminish. The debts are not mutual, they are to and from different persons, the one is collateral and the other direct; and in such a case a set-off was never heard of. If this were practicable, a garnishee might have a double set-off, one against the defendant in the action, and another against the plaintiff, a circumstance equally novel.

Consider the operation of our foreign attachment law. Its object is to compel the defendant's appearance; and when that is obtained within the period allowed, all intervening acts with the garnishee are avoided, and he is completely discharged. 1 *St. Laws* 60. *Act of* 1705, *sec.* 2. If then the garnishee establishes this set-off upon the *scire facias*, and the defendant afterwards enters special bail, the set-off is defeated, and the defendant may recover his whole money from the garnishee. The set-off is to be effectual or not according to circumstances; and this clearly shows that it does not partake of the nature of a legal set-off, which once made is permanently good. So after execution awarded, the plaintiff is to find security that if the defendant in the attachment shall within a year and a day come into court and disprove or avoid the debt recovered by the plaintiff against him, he shall restore the goods by him attached, or so much thereof as shall be disproved or avoided. *Sec.* 4. If this set-off be good, he may recover but one half of the goods attached, and his security on the execution will nevertheless bind him to restore the whole in case the whole be disproved. To be sure, in a case where the sum set-off was completely due by the plaintiff to the garnishee, he would pay no more than was due from him to both parties, if he paid the whole sum disproved; but where a question of assets, as in this case, is involved in the sum due to the garnishee, it is very clear that he

might be compelled to pay more than was due from him; and this affords a strong argument that a set-off with such consequences can never be allowed.

The language of the acts of Assembly is equally cogent. The plaintiff is entitled to the whole amount at the time of the attachment due to the defendant by the garnishee; and if the garnishee does not find security for its being forthcoming, whether goods or money, the sheriff must take it from his hands and secure it himself. Could a plea of set-off against plaintiff affect the sum thus taken from his hands? And can his giving security for it alter the case of the plaintiff? No plea by garnishee to the *scire facias* will be good, except what is tantamount to *nulla bona;* and accordingly all the interrogatories are directed to that point by the act of Assembly. 2 *St. Laws* 734. *sec.* 2.

The defendants are too late with their demand of set-off on the present *scire facias*. The first *scire facias*, which was followed by the judgment in *September* 1801, was that upon which the garnishee should have claimed his right. The present *scire facias* is brought upon the judgment which established the right of the plaintiffs to thirteen shares of bank stock, to recover the dividends since accruing; and no plea can be sustained in answer to the present *scire facias*, which could have been offered previous to the judgment.

For the defendants. It is necessary to shew that we are in time before we proceed to the legality of our demand. It is perfectly clear that the defendants cannot plead to the *scire facias* what they could have pleaded to the first judgment. But it is proper to accompany this position with an explanation; they cannot plead to this *scire facias* that which will *defeat* or *affect* the first judgment; this is the rule, and we are perfectly within its provision at this moment. The present *scire facias* is not to execute the old judgment, but to get possession of a *new* property, the dividends since declared; and our plea is not to affect that judgment, but to defend ourselves against a second demand accruing since, and not depending on the first *scire facias*. But a right to set-off cannot be impaired by any act of the plaintiff; he cannot force us to set-off at any time, *Baskerville* v. *Brown;* (a) and this being to every intent a new action, we are in time

(a) 2 *Burr.* 1230.

upon every gound. The omission of the bank in the first instance was a mere oversight; and there is nothing in precedent or principle against its being cured at this day; certainly nothing in principle, for it is analogous to the known case of a tenant holding his landlord's note; and it is no hardship upon the debtor, for he has suffered nothing by the omission, as he would, if it were to touch the original judgment.

[YEATES J. This point has less weight than at first it appeared to have, since the present is a new claim for dividends, to which there has been no opportunity of answering until now.]

As to the general question. Set-offs are favoured by law. *Collins* v. *Collins.* (a) They are instituted to prevent circuity of action. 1 *St. Laws* 65. The objection that a new distribution of assets would be produced by allowing the set-off, has been made in another case, and overruled. *Brown* v. *Holyoke.* (b) If there be mutual debts subsisting between the testator and I. S., the executor will be indemnified in setting off I. S.'s debt against his testator's, though they be of different characters. Priority of payment must have a relation to the source of payment—the assets; now assets in this case are only the balance due from a debtor to the testator, cross claims deducted. If this objection is invalid, it then returns to the case of a plaintiff in full life; and surely in that case a court will not allow the plaintiff to take money from the hands of his creditor who happened to be a garnishee, and turn him round to a suit on the ground of a debt which without a single inconvenience could be adjusted by set-off.

Mutuality is necessary to a very slight degree. *Slipper* v. *Stidstone.* (c) Buying the plaintiff's paper before action brought, entitles the defendant to set-off. *Primer* v. *Kuhn.* (d)

Cases of double set-off, to which it is said there is nothing similar, are nevertheless very numerous. A defendant may have a set-off in his own right, and also in the right of his deceased partner. *Slipper* v. *Stidstone. French* v. *Andrade.* (e) If he deals with a factor who conceals his principal, and is afterwards sued by the principal, he may set-off a debt due by the factor, and at the same time one due by the principal. *Rabone* v. *Williams;* (f) and in like manner the assignee of a

---

(a) 2 *Burr.* 825.
(b) *Bull. N. P.* 179.
(c) 5 *D. & E.* 493.

(d) 1 *Dall.* 452.
(e) 6 *D. & E.* 582.
(f) 7 *D. & E.* 360.

bond is liable to two set-offs, one by the original obligor, and another by any particular defendant.

The operation of the attachment law is unquestionably favourable to set-off. By the judgment in the foreign attachment, the plaintiff becomes creditor of the garnishee by substitution, and all the legal consequences accordingly attach on him. How is it possible to separate from this number the right of set-off? The security under the law can work no injury; for it is a security to refund; and all that can be demanded under it is the amount received in virtue of the attachment. And if no plea to the *scire facias* be good except one which is tantamount to *nulla bona*, then it is impossible for the garnishee to plead a release; a position which cannot be maintained.

YEATES J. Set-offs are agreeable to reason and justice; and in actions by or against executors, where there are mutual debts, they are allowed with great reason. But this mutuality of debt is the essential circumstance in a set-off; and was there any thing of the kind in this case? The debt of the bank was due to *Brown*, it owed nothing to *Clow* and *Cay* at the time of their death. The object of a foreign attachment is none other than to get the party's appearance by attaching his property, and it would produce great confusion to turn it to the purpose of settling collateral accounts like this. To allow the defendants to pay themselves in this way, would be an injustice to the other simple contract creditors of *Clow* and *Cay*, whose right to this debt from *Brown* to *Clow* and *Cay* vested in them generally upon the death of the latter, and could not be diminished by the subsequent act of the defendants; it is upon this point that a majority of the court rely in giving judgment for the plaintiffs.

SMITH J. The ground I go upon is that the money was fixed as between executors and garnishee the instant the testator *Clow*, surviving partner of *Cay*, died. I give no opinion upon the point of mutual debts and set-off.

BRACKENRIDGE J. I am of opinion that if judgment had been rendered against the garnishee before the death of *Clow* and *Cay*, so as to have made it a debt of the garnishee's to them, then the set-off might have been made; but the instant they died, the right to the whole of *Brown's* money vested in the creditors generally, who became thereby entitled to its distribution for their benefit.

Judgment for Plaintiffs.