[CHAMBERSBURG, OCTOBER, 1828.]

CRIST and another *against* BRINDLE and another.

IN ERROR.

Defendants sued on a bond given by them to executors, for a debt due the testator may set off a debt due to one of them, (he being the principal, and the other defendant surety,) by the testator, for work done.
Evidence is admissible on behalf of the defendants in such suit, that, at a former trial, on another bond, the set-off was not allowed, because the counsel for the plaintiffs agreed, that it should be admitted on the present bond.

WRIT of error to the Court of Common Pleas of *Cumberland* county.

*Penrose*, for the plaintiffs in error.
*Carothers*, *contra*.

The opinion of the court was delivered by

HUSTON, J.—The plaintiffs below, who were the executors of *Brindle*, gave in evidence a bond, executed by *Crist* and *Holdeman*. There were several pleas and issues; payment with leave, &c. set-off, and issues, and notice of special matter given.

The defendants offered to prove, that *Crist* had erected an office, and other buildings, for *Brindle*, in his life time, and that the amount justly due on this account was one hundred and sixty-one dollars, and sixty cents: That, at the time the bond in question, and some other bonds previously due were executed, it was agreed, that *Crist* should have credit for this sum on one of the bonds: That this credit was actually indorsed on one of the previous bonds, by one of the executors; but, on the trial of a suit on that bond, the credit was not allowed, because it was agreed by the counsel in that cause, who had then brought the suit now trying, that the credit should be admitted on this bond, if it was really due to the defendants.

To the admission of this evidence the plaintiffs objected,

1. That it is not good as a set-off, for that the bond is to the plaintiffs personally, and the account offered is against the testator.

2. That the agreement offered does not apply to the bond in question, and does not authorize such a set-off.

3. That it is a joint debt, against two, and the offer is of a set-off, due to one of the defendants.

The defendants renewed this offer, with the addition, that *J. M. Holdeman* was only the bail of *Crist*, who is the real debtor.

The above is in substance the whole of both offers. Some irregular discussion took place, as to what could have really been proved. We must take it on the offers, as on our paper book.

The court did not, as is usual, simply decide to receive or reject the evidence, but put on the record the following reasons: "The

(Crist and another *v.* Brindle and another.)

executors, by taking this bond, were liable to the creditors of *Brindle* for the whole sum; they cannot be embarrassed in the recovery of it, by the claims of one of the defendants against *Brindle*, in his life time. *Crist had this claim, and might have pursued it against the executors;* and *had it tried alone,* unembarrassed by any other matters. This claim is by the executors, or it is by them personally; in either event it is in a different right from that in which the set-off is claimed; there is no mutuality. The agreement does not refer to this bond. The authority cited is in favour of the plaintiffs, on the third objection made to the admission of the evidence."

The matter is not of much value, but the points in dispute are of general application. At first view, there might appear some inconsistency in the decisions; it will on examination be found confined rather to the *dicta,* than to the decisions.

Where executors or administrators sell the personal or real estate of the deceased, and, as is universal in this state, take bonds for part of the purchase money, we find some confusion as to the nature of these bonds. From a desire to support them, in suits on them, it has been said, they are the personal property of the executors; that naming them executors is only surplusage, &c. In point of law and fact, this is true only with great limitation, and restriction. Administrators, by order of the Orphans' Court, sell lands, to be paid for one third in hand, and the residue in two years, to be secured by bonds. If the administrator take the bonds, and die, these bonds do not belong to his estate, but to the estate of the intestate, and ought to be delivered to the administrator *de bonis non,* of the first intestate. The representatives of the administrator will be badly advised if they claim them, or any interest in them. If the administrator did not die, but on application was removed, the court would compel him to deliver them over.

So, of notes taken for the sale of personal property, always sold at vendue on credit, and notes taken. The administrator taking notes or bonds, as administrator, is not personally responsible in any of these cases, if he acts fairly, and with as much care as is usually shown by a prudent man in conducting his own business. 2 *Com. Dig.* 530. *Chancery, Assets,* 2 *G.* 2. *Cas. Chan.* 74. If an executor does an act in good faith, and for the benefit of the estate; as, if he release a debt to a tenant supposed insolvent, to get him off the land, he is not answerable. 2 *P. Wms.* 381. Even if he were mistaken in the state of facts, yet, if acting for the best, he is not liable. 2 *Johns. Cases,* 376. If robbed, he is not liable. 1 *Caines's Cases,* 96. So, if he pays money to his solicitor, to pay a debt, and the solicitor is robbed. 2 *Vez.* 240.

The old cases at law are very harsh, and so are some of the modern ones. The business relating to them, and their accounts, are now settled in courts of equity, and more conformably to justice. Equity will not always pin him down to an admission of assets; as,

(Crist and another *v.* Brindle and another.)

if the money were in a banker's hands, (and the best banker in *England* may fail;) that, undoubtedly, will not bind him, but he must make out his case—he must prove the mistake in once admitting assets, and the circumstances from which they failed. 2 *Vez.* 85. Where an executor gives his own recognisance to pay creditors, and houses in *London* are burnt down by fire, by which the greatest part of the assets are lost, there shall be no remedy on the recognisance beyond the assets which remain. 2 *Com. Dig.* 531. *Chan. Assets,* 2 *G.* 2. 2 *Vern.* 57.

The executor is not then liable to creditors, at all events, for the whole amount of a bond he may take: he may increase his difficulty, by taking or suing it in his own name; but it is his duty in many cases to take bonds; and if he does, and uses proper care, and acts honestly, he is not liable at all events for the amount of the said bonds.

The *British* statute, 2 *G.* 2, of set-off, expressly makes debts to or from the testator the subject of set-off. That statute does not apply here; but our act about defalcations embraces the case. 1 *Binn.* 64. Set-offs are agreeable to reason and justice; and in actions by and against executors, where there are mutual debts, are allowed with great reason. In 3 *Binn.* 135, the point was expressly made and decided, that a set-off or defalcation can be, and has uniformly been, made under our act of assembly, where one party is executor or administrator, and where the debts are in the same rights; that is, in a suit by an executor, the set-off must be a debt of the estate, and not the individual debt of the executor. And so, in a suit against him, the set-off must be a debt due the estate. And where the debt set off was due by the intestate in his life time, it must be set off, though there will be a deficiency of assets. But a person cannot buy a debt, after the death of the testator, and set it off; for it would disturb the course of distribution. So, a creditor of the estate cannot purchase at a vendue, and set off his debt, when there is an alleged or real deficiency of assets, for the same reason. 10 *Serg. & Rawle,* 10.

It was admitted here, the bond was for a debt due the testator; and the debt offered to be set off was due by the testator, in his life time. But it is said, in a suit against two, a debt due to one of them cannot be set off. It must be recollected, that in this case it was offered to be proved, that *Crist,* whose demand it was proposed to set off, was the real debtor in the bond, and *Holdeman* only his bail. This brings it within the case of *Stewart for the Use of Salaignac* v. *Coulter and Day,* 12 *Serg. & Rawle,* 252, *and* 445; and whether admitted as a legal or equitable set-off, I shall not inquire; but by that case it must be admitted.

The testimony as to what was said by the counsel at the trial, on a former bond, may be evidence, not to charge the plaintiffs, because I do not know that his admissions would be evidence for that purpose, but to show that the set-off was not then decided on, but left for decision in this case.

Judgment reversed, and a *venire facias de novo* awarded.