## No. 71.

33 1203
109 781

### THE LIFE ASSOCIATION OF AMERICA vs. SIMON LEVY, JOHN R. FELL, RECEIVER, INTERVENOR.

A Corporation created under the laws of a sister State, has the right to sue and stand in judgment in the Courts of Louisiana.

When such a Corporation has been decreed insolvent and an assignee or trustee appointed to it, under the laws of, and in, the State where it was created, the assignee or trustee so appointed has the right to sue for the assets of the insolvent Corporation and stand in judgment in the Courts of Louisiana.

The agencies and sub-agencies established in this State by that Corporation, under its charter, are revoked by its insolvency, and the assets in the hands of such agencies and sub-agencies should be delivered to the assignee or trustee.

The investment of the profits of Insurance Companies in loans secured by mortgage, cannot be considered as banking business and is not prohibited by law.

The laws of other States can have no extra-territorial effect in this.

A member of a Corporation, who is a creditor thereof, has the same right as any other creditor, to sue the Corporation and attach its property.

The foreign assignee or trustee of an insolvent Corporation, suing a debtor in this State, cannot urge against the latter's reconventional demand, that the same is equivalent to pleading compensation against an insolvency.

APPEAL from the First Judicial District Court, parish of Caddo. *Taylor, J.*

---

*Wise & Herndon* for Plaintiff and Appellant:

First—A foreign corporation, unless prohibited by special statute, may make contracts within the scope of its authority in another State than that of its creation. 7 L. 31; 4 R. 517; 13 Peters, 521.

Life Association of America vs. Levy.

Second—Foreign corporations may institute suits in courts of this State, and in case of insolvency be represented by assignee or receiver. Angell & Ames on Corporations, p. 395 and notes; 2 A. 430.

Third—The lending of money on note and mortgage security is not banking business. Angell & Ames, p. 241.

Fourth—As to defendant's reconventional demand. The policy held by defendant did not become a debt of the insurance company until its insolvency.

To compensate against an insolvent, the indebtedness must precede the insolvency of the company. 15 A. 165; 23 A. 36.

### *Looney & Elstner* and *Land & Land* for Defendant and Appellee:

First—A corporation cannot make a contract for the loan of money or take security for it, unless the power is expressly given or necessarily incident to the powers granted. North River Insurance Company vs. Lawrence, 3 Wend, 483.

There is no *implied* power in a corporation to loan its funds, unless it be a bank. Therefore, an insurance company prohibited from discounting paper, could not lend money on a note and take interest in advance. Daniel on Negotiable Instruments, 384.

In the case at bar the note sued on was given for money loaned by the plaintiff (insurance company) at eleven per cent. paid in advance.

Second—The plaintiff, being a non-resident, and the intervenor, a resident of New Orleans, defendant can reconvene for *any cause*, although not connected with nor incidental to the main action. C. P. 375; 5 A. 150; 10 A. 98; 12 A. 257; 16 A. 250; 27 A. 642.

Third—The insolvent laws of Missouri can have no extra-territorial effect. 5 A. 273; 15 A. 110. Our home creditors are entitled to any and all remedies known to the laws of Louisiana against absentees. They may *attach* the property of the foreign insolvent. 15 A. 110; Story, Conflict of Laws, Sec. 420-1. Reconventional demands for *any cause* are a remedy allowed by express law in such a case as the one at bar.

Fourth—This is not a case of *compensation*. But if it were, it is well settled in jurisprudence that the creditor of an insolvent or of a succession may maintain the plea, when the indebtedness was contracted *prior* to the insolvency or to the death. 15 A. 165; 1 N. S. 483; 10 A. 404; 27 A. 695.

Fifth—A member of a corporation, who is a creditor, has the same right as any other creditor to secure the payment of his demands by attachment or otherwise. 7 R. 513; 5 N. S. 327.

Sixth—Defendant is entitled to the rescission of the contracts made with plaintiff and to recover what he has paid. C. C. 1912.

### *J. L. Hargrove* for the Intervenor and Appellant:

In a conflict of laws it is often matter of doubt which should prevail, and in such a case the court will prefer the laws of its own country to that of a stranger. 5 N. S. 587; 16 Louisiana, 433.

Compensation cannot take place unless the debts exist simultaneously between debtor and creditor and not where the reconventional demand has become a claim (unliquidated) since filing of plaintiff's suit.

A foreign corporation having property rights and credit in Louisiana shall be administered in Louisiana as though it were a succession of an individual having property in no other country or State.

The property of a band of outlaws would be liable to any creditor of the band in the same manner that the property of a legal corporation would be.

----

The opinion of the Court was delivered by

Levy, J.   On the 9th of April, 1878, the Life Association of America, a duly incorporated company, domiciled in St. Louis, Missouri, and having a department in Louisiana and Texas and a branch or district at

Shreveport, Louisiana, instituted this suit against the defendant, praying for judgment against Simon Levy in the sum of three thousand dollars, with eight per cent per annum interest thereon from February 23d, 1875, alleged to be due plaintiff by defendant on the latter's promissory note for that sum, dated February 23d, 1872, due twelve months after date to the order of Robert H. Lindsay president (said Lindsay being at that time president of the Shreveport branch of said company), with eight per cent per annum interest from maturity, interest having been paid on said note by said Levy to February 23d, 1875. Plaintiff sets forth that said note was secured by special mortgage on certain property in the city of Shreveport, described in the mortgage, and he prayed for the recognition and enforcement of said mortgage. Before answering, defendant filed exceptions to said action, on the grounds: 1st. That plaintiff brings this action as a "foreign corporation," and he denies that it has any legal existence as a person authorized to bring suit or stand in judgment in the courts of Louisiana. 2d. That the petition discloses no name or person having authority to bring this suit, and avers that any judgment rendered on the pleadings cannot support the plea and authority of things adjudged. 3d. That neither the "Louisiana and Texas Department," nor the "Shreveport District," were ever incorporated and, therefore, they have no existence as legal persons and no authority to make a contract, bring an action, or stand in judgment in the courts of this State. 4th. That defendant never made any contract with said "Life Association of America," and never received any money or thing of value from said association, but the contract sued on, as shown by the petition and note and mortgage annexed to the petition, was made with the "Shreveport District." 5th. That if said Shreveport District had any lawful existence, its authority and vitality were created by a contract between J. B. Hood, representing said "Louisiana and Texas Department," as a person, and Robert H. Lindsay, representing said "Shreveport District," as a person. 6th. That, by virtue of said contract, it was agreed that the entire business and net assets of the business of said district, shall be invested and kept invested in the city of Shreveport, viz: the whole of the premiums received in said district, less an amount to be held as a contingent fund to pay expenses and losses, not to exceed thirty per centum of the premiums received, and that thirty per centum to be held and controlled by said "Louisiana and Texas Department," and not to be paid out at all except *pro rata* to meet the expenses and losses aforesaid. 7th. That it was further expressly stipulated that the control and collection of all securities and loans of said "Shreveport District," shall be made through and under the officers of said district, and when collected, shall remain in the charge and control as before investment.

Defendant avers that this suit is brought without the consent and against the will of said Shreveport District.. He also avers want of amicable demand, etc.

These and the other exceptions were referred to the merits and ordered to stand as part of the answer.

W. B. Wilcox, as "Receiver" (appointed by the Fifth District Court of New Orleans) of the Life Association of America, for the branch department of the State of Louisiana, filed his intervention on the 5th of April, 1880, in which he claimed that the sum sued for, etc., should be paid to him for the benefit of the Louisiana creditors of said association. Defendant filed exceptions, similar to those above set forth, to the intervenor's petition. John R. Fell was subsequently appointed by said Fifth District Court of New Orleans, receiver for Louisiana, vice said Wilcox, resigned, and was substituted as intervenor herein. Wm. S. Relfe, of Missouri, as superintendent of the insurance department of the State of Missouri, on the 5th of May, 1880, filed his petition setting forth that he was the transferee of all the assets of every character whatever, of the said Life Association of America, by virtue of a transfer and assignment made by the president of said association, on Nov. 10th, 1879, and prayed that he be substituted as plaintiff in this suit, adopting the allegations of the original petition. Like exceptions to those filed as above, were pleaded to this petition by defendant. The intervention was duly put at issue. Defendant in his..answer to plaintiff's petition (without waiving his exceptions thereto), denies the allegations therein, except as to his signature to the note sued on; denies that said note has ever been endorsed, transferred or assigned by the original payee or his successor, and avers that the legal title thereto is in the original payee and that the plaintiff has no right of action thereon. He further aveıs that the original consideration of the note was a loan of money at an usurious rate of interest, beyond the powers and authority of the Life Association under its charter and beyond any implied powers, and was reprobated by law. He further demands in reconvention the sum of $4,375 24, the amount of annual premiums paid by him on his policy of life insurance in said association. He avers that said association, by its bankruptcy in the year 1879, became *civiliter mortuus* and incapable of carrying out its part of the contract of insurance, although respondent was ready and willing to perform and had performed all the obligations incumbent upon him. He avers that said contract has become null and void through default of the plaintiff, and prays the Court to decree said nullity, and for judgment against said association or its legal representative, for said sum of $4,375 24, with five per cent per annum interest from the date of insolvency of said association in 1879. He avers that, if. he should not be entitled, in law, to recover said cash premiums, then he is entitled,

both in law and in equity, to recover the sum of $615, which plaintiff agreed to pay respondent, and also the amount of said policy of insurance, the sum of $5,000, less the unmatured premiums that would become due in the years from 1880 to 1885, the first named year inclusive, at the rate of $324 45, for each year, making the aggregate sum of $4,003 35, for which he prays judgment in reconvention, with five per cent per annum interest from said date of insolvency. Plaintiff and intervenor plead the prescription of one, three, five and ten years to the reconventional demand. The District Court rendered judgment, decreeing that plaintiff do recover of defendant the sum of $3,000, with eight per cent per annum interest thereon from 23d February, 1875, and recognizing plaintiff's special mortgage on the property described and costs of suit, and also decreeing that there be judgment in favor of defendant on his reconventional demand for the sum of $3,839 60, with legal interest thereon from the 10th of November, 1879; and also decreeing that the intervention be rejected with costs.

From this judgment the plaintiff and the intervenor have both appealed.

Appellee, in his answer to the appeal, avers that the lower court erred in not sustaining defendant's exceptions and dismissing the suit, and that defendant should have had judgment for the sum of $4,375 24 on his demand in reconvention, and prays that the judgment be reversed and amended with respect to these points complained of, and, as thus amended, affirmed with costs.

The questions presented for our consideration and decision are important and interesting, and are discussed by counsel representing the parties with marked ability. The opinion of the District Judge is exceedingly full, and with its characteristic clearness aids us materially in our investigations.

The record shows that the Life Association of America was, under the name of the Life Association of Missouri, incorporated, under the general laws of the State of Missouri, in 1868, and in October of the same year, by amendment of the charter, its name was changed to that of the Life Association of America. In 1870, J. B. Hood, styling himself "Manager and President of the Louisiana and Texas Department of the Life Association of America," entered into contract with R. H. Lindsay, styling himself President of the Shreveport District of said Department, by which the President, Secretary, Directors and Trustees of said District, were appointed agents of the Life Association for the transaction, in said District of the business of said Association, it being provided in said mandate, that the whole of the premiums, less an amount, not to exceed thirty per centum thereof, received in said district should be invested and kept invested in the city of Shreveport. An addendum was

made and signed by said Lindsay, subsequent to the signature of said Hood, of the following proviso: " Accepted with the proviso that the collection of the securities and loans of the Shreveport District, shall be made through and under the direction and control of the officers of said district, and when collected shall remain in their charge and control, as before the investment.

The original and amended charters of 1868 gave no authority or power to the parent company to establish such departments or branches or districts. This power was given more than two years after the creation of the Shreveport District, by an amended charter adopted in September, 1872.

The Louisiana and Texas department and the Shreveport branch were neither of them ever incorporated under the laws of Louisiana and never had any existence as a juridical person, any corporate name or capacity to make contracts or to stand in judgment. The creation of the department and branches, in other States, by the Life Association of America, under their amended charter, could not confer upon them any power to act as a corporation. The Louisiana and Texas department was the agent, and the Shreveport branch, the sub-agent, of the association. Sec. 18 amended charter of 1872. The defendant was a policy holder, on the endowment plan, for $6,500, which policy was, by agreement, reduced to $5,000, and on the 23d of February, 1872, he obtained the loan of $3,000, for which he gave his note and mortgage to secure the same, the interest on which note was paid up to February 23d, 1875. He also paid the premiums due on his policy, up to March 1st, 1880, aggregating the sum of $4,375 27.

In November, 1879, the Life Association of America was, by the Circuit Court of the City of St. Louis, adjudged and declared insolvent and the corporation dissolved, and it was decreed that all its assets, whether in Missouri or elsewhere, be vested in Wm. S. Relfe, to be held and disposed of by him for the use and benefit of the creditors and policy holders, and it was also decreed that said Relfe should proceed to collect all claims due to said association in Missouri or elsewhere, and be authorized to sue and be sued in the courts of Missouri or any other State, in any matter affecting the assets of said association.

Has Relfe, the assignee of the association, the power and capacity to prosecute this suit and stand in judgment in the courts of this State?

The Life Association of America was duly incorporated under the laws of Missouri. In Angell & Ames on Corporations, p. 373 et seq. (3rd edition) it is said : " A company claiming to be incorporated has only to show that it has been regularly and effectually made a corporate body, to enable it to sustain a suit beyond the jurisdiction within which it is constituted." This rule obtains in England and is upheld by numerous

English authorities. Also: "Every argument in favor of establishing, in American courts, suits by corporations created by the laws of a country, not forming part of the American confederacy, applies with still greater force to corporations of the States composing the confederacy." 2 Rand. (Va.) R. 465 ; 10 Mass. R. 91 ; 2 Scammon (Ill.) 237, 428 ; 4 Rob. (La.) 518 ; 7 Martin (La.) 31 ; 9 Watts (Penn.) 126, etc. In Planter's Bank vs. Bass, 2 An. 431, it was held that : " Trustees, appointed under a law of another State to take charge of the assets, collect the debts, etc., of a dissolved corporation, may sue a debtor of a corporation in this State." See, also, 13 Peters 519, Bank of Augusta vs. Earle, in which case Chief Justice Taney has most learnedly elucidated this doctrine.

This right existing in a foreign corporation, we can see no reason why it should not attach to the assignee of an *insolvent* foreign corporation.

We agree with our learned brother of the lower court, that the " Louisiana and Texas Department " and the " Shreveport Branch," not being incorporated under the laws of Louisiana, acted in this matter as the agent and sub-agent of the " Life Association of America," and the acts of these agents were fully ratified, as is shown by the institution of this suit. We concur, also, in the opinion that the association was entitled to the ownership of the note and mortgage, the payee of the note being its agent, and the transfer and assignment of its assets, under the order of the St. Louis court, vesting all its rights to sue and recover the same in Relfe, the assignee. 11 L. 531 ; 12 L. 109 ; 2 R. 123 ; 9 R. 32 ; 4 An. 490 ; 6 An. 40. The insolvency of the association operated as a revocation of all the powers which had been conferred by it on its agent and sub-agent. C. C. 2996.

We do not think that the investment of the premiums, etc., received by the company or association in loans, secured by mortgage or otherwise, can be regarded or treated as carrying on a banking business. The right to make such loans is not prohibited by law, but, on the other hand, we think that the association had such right resulting by implication from its charter and incident to the purposes thereof. 11 An. 232; 5 N. S. 587; Angell & Ames on Corporations; 14 Ohio. 6.

The right of the defendant to set up and urge his demand in reconvention against the plaintiff, a resident of the State of Missouri, is, under our law and the jurisprudence of our State, too plain to require argument. 16 An. 250; 27 An. 642; C. P. 375; 12 An. 257, and other authorities. The objections urged by plaintiff to the allowance of the reconventional demand on the ground that it would be a compensation of plaintiff's demand, and that this cannot take place, because plaintiff is insolvent and defendant cannot compensate his own debt, but is entitled only to such dividend as may be declared after a final settlement, and because

the policy holders of the association are partners and can only sue for a settlement of the partnership affairs, are fully met, discussed and over-ruled by the lower judge and, we think, properly. The learned judge of the lower court holds: "Whatever may be the insolvent laws of Missouri, or other States, they can have no extra-territorial effect. 5 An. 273; 15 An. 110;" 15 An. 165; 23 An. 36, 49, 60, 112; 27 An. 695. "Incorporated companies are entirely dissimilar to those of ordinary co-partnerships, or unincorporated joint stock companies. A member of a corporation, who is a creditor, has the same right as any other creditor to secure the payment of his demands, by attachment or levy on the property of the corporation, although he may be personally liable to satisfy other judgments against the corporation." Story Conflict of Laws, ¿ 420, 421; 7 R. 513; 5 N. S. 327.

The defendant is entitled, under his reconventional demand, to recover the amount which he has paid as premiums on his policy, or so much thereof as he is entitled to receive under the conditions incorporated in his policy. That amount has been fixed by the agent of the company, at the sum of $3224, and interest is due thereon at the rate of five per cent per annum from the date of the adjudication in bankruptcy, November 10th, 1879. He is also entitled to the further sum of $615 60 with like interest from like date, this last mentioned amount having been fixed as due to defendant, growing out of the reduction of the amount of his policy, and being acknowledged by the company as the cash value of the difference between the original and reduced policy.

Upon the evidence contained in the record, uncontradicted, we have adopted the valuation above stated as the cash value of the policy, and the acknowledgment of the indebtedness of $615 on the reduced policy fixes that amount beyond controversy or dispute.

The intervenor has not made out such a case as will enable us to pass upon the question which he raises. We find in the record, as sustaining his demand, a mere order of the Fifth District Court of New Orleans, unsupported by any of the proceedings upon which it was based and with no sufficiently clear definition of the powers with which he should be invested, to enable him to institute this or other suits. He is merely authorized to "take charge of all the assets, books, and property, rights, credits and securities within the State of Louisiana, belonging to the estate of the Life Association of America," and this order was made on his *ex parte* application to be appointed receiver in place of W. B. Wilcox, resigned.

In rejecting the intervenor's demand upon the evidence presented in this record, we express no opinion upon the validity or propriety of the proceedings in the Fifth District Court of New Orleans, in which intervenor claims to have been appointed as receiver. That proceed-

ing is not laid before us with the fullness necessary to enable us to pass on these questions.

The judgment appealed from is, therefore, affirmed; the costs to be paid by the appellants.

### On Application for Rehearing.

The opinion of the Court was delivered by

Poché, J.   Plaintiff's counsel call our attention to the omission in the judgment of the lower court, and in our decree, to pass upon his claim for five per cent. attorneys' fees on the amount of his judgment, as stipulated in the act of mortgage of February 23d, 1872.

Our decree must be amended so as to recognize plaintiff's right to recover his attorney's fees thus stipulated.

But a reference to the act of mortgage discloses the fact that attorneys' fees are not stipulated to or secured by the mortgage securing the payment of the note of $3000, in capital and interest; the stipulation for attorneys' fees is contained after and outside of the mortgage clause, and hence we cannot decree that such fees are .secured by mortgage. These views are not only supported by a correct interpretation of the act, but are sustained by previous adjudications of this Court on a similar point.

It is, therefore, ordered that our previous decree be amended, so as to amend the judgment of the District Court, and to decree plaintiff entitled to recover of defendant attorneys' fees at five per cent. on the sum of $3000, with interests and costs, without recognition of mortgage for such fees on the property mortgaged to secure the note; and it is also ordered that the costs of appeal be paid by appellee, and that, as thus amended, our previous decree remain undisturbed and in full force.