(73 South. 266)

No. 21909.

PAINTER v. BANK OF OSYKA.

(Nov. 13, 1916. Rehearing Denied Dec. 11, 1916.)

*(Syllabus by the Court.)*

1. CORPORATIONS ⚮670(5) — ATTACHMENT AGAINST—RIGHT TO STOCKHOLDER.

A stockholder, resident in this state, of a corporation domiciled elsewhere, has the same right as any other creditor to enforce payment of his debt by attaching property belonging to his debtor and here situated.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2633; Dec. Dig. ⚮670(5).]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⚮164—EFFECT OF—RECORDATION.

An assignment, omnium bonorum, by a corporation domiciled in another state, for the benefit of all of its creditors without preference, does not operate to convey and deliver real estate in Louisiana to the assignee, unless recorded in the parish where such property is situated, and does not prevent the attachment of such property by a creditor of the corporation, whether stockholder or not, who is a nonresident of the state of the corporate domicile, and who was not an actual party to the assignment.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 472, 473; Dec. Dig. ⚮164.]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⚮193—RIGHT OF ATTACHMENT—CREDITOR OF BANK.

A stockholder, residing in Louisiana, of a bank, domiciled in Mississippi, who is also a creditor of the bank for money deposited therein, is not estopped to proceed against the bank, or its assignees or receivers, for the collection of the debt due him, or to attach real estate belonging to his debtor and here situated, by reason of the fact that he has previously accepted a certificate of deposit, in lieu of his money, and consented to delay in the payment, when, by the action of his debtor, in making an assignment, to which he was not an actual party, all debts are matured, and other creditors, not stockholders, are left at liberty so to proceed and attach.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 196, 594–601; Dec. Dig. ⚮193.]

4. EVIDENCE ⚮348(2)—CERTIFICATION OF JUDICIAL PROCEEDINGS—SUFFICIENCY.

Where, in the matter of judicial proceedings purporting to be certified according to the act of Congress, the judge certifies to the signature and official capacity of the clerk, but it appears that the certificate required of the clerk is not signed by him, but is signed by a deputy clerk, and no one certifies to his signature or official capacity, the certification is not as required by the statute, and the proceedings are not admissible in evidence in another state when objected to.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1369–1383; Dec. Dig. ⚮348(2).]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; W. S. Rownd, Judge.

Action by Benjamin Guy Painter, against the Bank of Osyka. From a judgment for plaintiff, defendant appeals. Affirmed.

Purser & Magruder and Clay Elliott, all of Amite, for appellant. R., C. & S. Reid, of Amite, for appellee.

### Statement of the Case.

MONROE, C. J. This suit was brought on a certificate of deposit, reading:

"No. 1010.        Bank of Osyka.        $3,500.00.
"Not subject to check.
"Osyka, Miss., June 13, 1912.

"Mrs. Ella Painter has deposited in this bank thirty-five hundred no/100 dollars, payable in current funds to the order of herself eighteen months from date, subject to the provisions of agreement heretofore made, on the return of this certificate, properly indorsed. Interest payable, after maturity, at the rate of four (per cent.) per annum.        [Signed] H. Coumbe, Cashier.

"M. B. Varnado, Pres."

And plaintiff caused a writ of attachment to issue under which certain lands belonging to defendant and situated in the parish of Tangipahoa were seized. W. D. Ott and D. E. Newman, alleging that they had been appointed "assignees—receivers" by the chancery court of Pike county, Miss., where the bank is domiciled, appeared and excepted to the jurisdiction, and, the exception having been overruled, filed an answer, in which they reiterate the averments of their exception and plead estoppel and prematurity of action. There was judgment for plaintiff, and the parties thus appearing as defendants prosecute this devolutive appeal.

On the trial of the exception, counsel for the exceptors offered copies of certain provisions of the Constitution and Code of Mississippi, which were objected to as irrelevant, but admitted. They then made several offers of "proceedings in the chancery court of Pike county" without particularly identifying the proceedings otherwise than by statements to the effect that they were filed as Nos. 2, 3, 4, 5, and 6, but we find no exhibits bearing the numbers 2 or 4 in the transcript, and are unable to determine to what documents, other than the particular ones upon which they appear, the numbers 3, 5, and 6 are intended to apply. Beyond that, the certificates appear to have been signed, "Chas. E. Brumfield, Clerk Chancery Court, by Jno. A. Lamkin, Deputy Chancery Clerk," whereas the certificates of the chancellor read:

"Do hereby certify that Chas. E. Brumfield, whose genuine signature appears to the foregoing certificate of certification, is now, and was,

at the date of said certificate, the clerk of the chancery court; * * * that his certificate is in due form of law," etc.

But there is no signature of Brumfield, and no one certifies to the genuineness of the signature, or the official capacity, of Lamkin, who signs for Brumfield.

Assuming that the exhibits thus referred to were properly certified and admitted, they at most establish, or aid in establishing, the following facts, to wit: That plaintiff and his wife and one or two others of his name held a few shares of stock in the Osyka Bank. . That in March, 1912, the board of directors of the bank, without notice to the stockholders, so far as the record shows, held a meeting and took action as follows:

"On motion, * * * seconded, * * * it was decided to close the bank and execute a general assignment, by unanimous vote; therefore, to that end; and likewise on motion, * * * seconded, * * * the president * * * and cashier * * * are authorized and directed to execute and deliver to J. E. Newman, as assignee, a general assignment of all the assets of the Bank of Osyka, of every kind, real, personal and mixed," etc.

The assignment having been made, J. E. Newman presented a petition to the chancery court, accompanied with a bond, a list of creditors, etc., and praying that the creditors be notified and that he be empowered to perform the duties of assignee or receiver, and, presumably, an order to that effect was made, though we fail to find it in the transcript. In May following there was a meeting of the stockholders, at which plaintiff herein was present, and it was resolved to take certain steps in an effort to re-establish the bank. One of those steps was the entering into of an agreement, by those of the stockholders who were willing (including members of the Painter family), which reads:

"We, the undersigned stockholders, agree for the case of the Osyka Bank, now in the hands of a receiver, to be withdrawn from the court, and we agree to issue to each depositor a certificate of deposit, for his deposit, due in eighteen months, and liquidate the assets of the bank and pay them as much as we collect, less necessary

expenses, and we agree, when the depositors have accepted and the court has permitted us to retake the assets, that we will reopen the bank for business."

Another step was the obtaining of the consent, of such of the depositors as were willing to give it, to the acceptance of the certificates referred to in the agreement of the stockholders. That consent was in written form and reads as follows:

"We, the undersigned depositors of the Bank of Osyka, agree to accept, in lieu of our deposit, a time certificate, issued by the bank, payable in eighteen months from date of re-opening of bank, and, at the end of eighteen months, and after we have received such amount as the conditions will warrant, to further extend the time of payment to such further time as may be necessary."

And that agreement also was signed by the members of the Painter family, who, it may be remarked, resided not in Mississippi, but in Louisiana, a short distance below the Mississippi state line. Application having then been made to the court, an order was obtained releasing the assets of the bank, on certain conditions, to the owners, and it again started in business, say in April or May, 1912, and plaintiff was made one of the directors. He did not retain that position very long, however, but resigned in September, and in October went to Texas, where he remained until August 14, 1914. In the meanwhile, on October 27, 1913, pursuant to a resolution of the board of directors, that day adopted, the president and cashier of the bank executed an instrument reading, in part, as follows:

"We, the undersigned, as president and cashier of said bank, do hereby convey, assign, transfer and deliver all the assets of the bank of Osyka, wherever situated and of whatever composed, consisting of real estate, personal property, * * * to W. D. Ott and D. E. Newman, as assignees, for the use and benefit of all the creditors, depositors and stockholders of said bank, without preference, and to be administered by said assignees in the chancery court of Pike county, as permitted and required by law."

It does not appear that plaintiff herein was notified of the intention to make the assignment, or participated in any action leading thereto, though his whereabouts and post office address were known to at least one of the officers of the bank, nor does it appear that any other step was taken to deliver the land which the bank owned in Tangipahoa parish to the assignees than the mere recital of delivery contained in the assignment. In other words, the assignment was never recorded in the parish where the land is situated. Plaintiff testifies that he went to Texas in 1909, and came back to see his "folks" in November, 1911; that he remained in Tangipahoa until October, 1912, when he returned to Texas, where he stayed until August 15, 1914, and that he then came again to Tangipahoa. He also testifies that Mrs. Ella Painter, to whom the certificate sued on was issued, was his wife, but that she was no longer living, and that neither she nor Miss Fannie Painter (who is plaintiff in a similar suit, which was consolidated with this suit for purposes of trial and argument) took any part in the assignment of October 27, 1913, or the proceedings leading thereto, or received any notice of the same, and that Mrs. Ella Painter was, at that time, on her deathbed.

### Opinion.

[4] The chancellor having certified to the genuineness of the signature of the clerk which was not attached to the exhibits offered by defendants, and no one having certified to the signature or the official capacity of the deputy clerk, whose signature appears thereon, we are constrained to hold that the exhibits are not properly certified and should not have been admitted in evidence. But assuming, for the moment, that they were properly certified and that they establish the facts sought to be proved by them, we find the law applicable to the case thus prosecuted to be as follows:

[1] A creditor may obtain the attachment

of the property of his debtor situated in this state, when such debtor resides out of the state. C. P. 240. The right of the creditor in such case is not affected by the fact that his debtor is a corporation in which he owns shares of stock. State v. Bank, 5 Mart. (N. S.) 327; Percy v. White, 7 Rob. 513; Life Association v. Levy, 33 La. Ann. 1210; Story on Conflict of Laws, § 420.

[2, 3] The laws of Mississippi have no extraterritorial effect, and an assignment thereunder of real property situated in Louisiana, is void as to a Louisiana creditor who was not a party thereto, unless and until recorded in the parish where the property is situated. C. C. 10, 491, 2266; Ramsey v. Stevenson, 5 Mart. (O. S.) 23, 12 Am. Dec. 468; Brent v. Shouse, 15 La. Ann. 110; Life Association v. Levy, 33 La. Ann. 1210; Reynolds v. Adden, 136 U. S. 348, 10 Sup. Ct. 843, 34 L. Ed. 360; Security Trust Co. v. Dodd, 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835.

It may be that, as concerns his rights as a stockholder, plaintiff is bound by the action of the court having jurisdiction of the domicile of the corporation, but he is not here asserting any such rights, and, with respect to his rights as a bona fide creditor, which he is asserting, he is bound by no other rule than that which applies to other creditors similarly situated.

"The stockholders of a corporation may deal with it and become creditors, if the transaction is free from fraud, and may enforce their claims in like manner as any other creditor, and, in most jurisdictions, unless prevented by statute, the corporation may, by payment, mortgage, confession of judgment, or otherwise, in the absence of fraud, prefer them over other creditors, or they may, themselves, obtain a preference by adversary proceedings against it." Marshall on Corporations, p. 1056, § 392.

In a supplemental brief filed on behalf of defendants, it is said:

"Exceptors, defendants, have not questioned, in their brief, the right of a stockholder-creditor, resident in Louisiana, to attack property, in all cases, located in Louisiana, belonging to a nonresident corporation in which he is a stockholder.

* * * But we maintain that a stockholder has no right in law to institute an attachment suit after the stockholders have voted and made a voluntary assignment of all the property of the corporation wherever situated, for the benefit of creditors, without preference, and the assignees have accepted, qualified, and entered on the discharge of their duties. * * *

"Again, the plaintiffs, stockholders, creditors resident in Louisiana, first invoked the aid of the chancery court of Pike county, Miss., in order to get the certificates of deposit sued on herein, and promised the chancery court and the other stockholders that they, as creditors, would be satisfied 'with as much as we can collect,' and, as creditors, that, 'at the end of 18 months, and after we have received such amount as the conditions will warrant, to further extend the time of payment to such further time as may be necessary.' * * *

"These undertakings and promises contemplate and provide for a fair and equitable distribution of all the assets, wherever situated, under the auspices of the chancery court, having power to enforce same, just as provided for by the law of Louisiana."

The learned counsel seem to lose sight of the fact that plaintiff and his wife and Miss Fannie Painter agreed to postpone the enforcement of their demands, for the repayment of the money deposited by them in the bank, as part of the arrangement whereby the assets of the bank were released from the operation of the first assignment and with a view to its resumption of business and ultimate satisfaction of their claims, and that they took no part in, and were not even notified of, the intention to make the second assignment, which was equivalent to a cession of property, and matured all debts due by the bank. C. C. 2054. They never agreed to await payment after their debts, and all other debts, were thus matured by the action of their debtor, of which they had no knowledge, in advance, and over which they could exercise no control; and, having been in no worse position before, they could not be placed in a worse position than other creditors, after, and by reason of, the action so taken.

We find no error in the judgment appealed from, and it is accordingly

Affirmed.