The judgment is affirmed at the cost of appellant.

(129 So. 628)

## MILLER v. INTERSTATE TRUST & BANKING CO.

No. 30548.

July 2, 1930.

Dart & Dart, of New Orleans, for appellant.

Denegre, Leovy & Chaffe, of New Orleans, for appellee.

## OVERTON, J.

This is a suit in which plaintiff, as owner of three $1,000 6 per cent. equipment participation certificates, and 3 $15 coupons, one attached to each certificate, sues defendant for the amount thereof, with legal interest thereon from September 3, 1929, until paid.

The certificates mentioned are part of the unretired remainder of a large number of certificates, issued by the Mortgage & Securities Company on September 1, 1925, secured by notes and contracts, which are secured in turn by a first lien on a standard automatic sprinkler system. The collateral, securing these certificates, was placed in the possession of defendant, as trustee, by the Mortgage & Securities Company, for the benefit of the holders of the certificates, under a contract, entered into between the Mortgage & Securities Company and defendant, on the date of the issuance of the certificates, by which defendant was made trustee.

This contract in the last paragraph of article 6 thereof contains a provision reading as follows:

"Until the occurrence of any default under the provisions hereof, it is understood between the parties hereto, and all future holders of certificates secured hereby, that the trustee is authorized and empowered to use any funds received by it as partial or total payment of any notes and/or contracts pledged hereunder, in paying the coupons and certificates issued hereunder and secured hereby, as and when the same shall become payable."

The contract also contains provisions in article 7 thereof reading as follows:

"The happening of any one of the following events shall constitute a default:

"(1) The failure of the company to pay at the office of the trustee in New Orleans, Louisiana, to the holder of any one of said equipment participating certificates, the sum or amount to which said holder is entitled, in accordance with the terms of the certificate held by him, such failure continuing for a period of thirty (30) days after the date on which such sum should be paid, and after written demand on the company and notice to the trustee by said holder that said payment be made.

"(2) The failure of the company to fully and promptly perform every and any obligation imposed upon it or assumed by it under the terms of, and in accordance with, the provisions of this agreement, said failure continuing for a period of thirty (30) days after written notice thereof in regard thereto given by the trustee to the company."

The happening of one of the foregoing are the only events named which will constitute a default.

In the same article of the contract it is also provided as follows:

"In the event of default, the trustee may, with the consent of the owners of a majority in amount of all outstanding equipment participating certificates of this issue, declare the entire amount of all outstanding certificates in default, and may sell the securities pledged without the consent of the company, at public or private sale in its discretion, and may apply the proceeds of such sale or sales to the payment of the equipment participating certificates then outstanding in the following manner."

On August 8, 1929, there was filed in the United States District Court for the Eastern District of Louisiana a bill praying for the appointment of a receiver for the Mortgage & Securities Company. On the day the bill was filed that company appeared in court and admitted that, though solvent, it was unable to pay its debts as they matured, and that a receiver was necessary to preserve and administer its assets for the benefit of all concerned. A receiver was appointed, with power to preserve and protect the property and assets of defendant, to run and operate its property, and to collect all rents, earnings, and profits thereof, with such other incidental powers as are ordinarily given receivers.

On September 1, 1929, the certificates owned by plaintiff, together with other certificates of the same issue, all aggregating $6,951.76, matured on their face. September 1 and 2, 1929, however, were legal holidays, and plaintiff presented his certificates to defendant for payment on September 3, 1929, but defendant refused to make payment.

When plaintiff presented its certificates for payment, defendant had on hand in cash, under the trust agreement, as the proceeds of securities previously collected, the sum of $13,143.57, which was more than sufficient to pay all of the certificates that matured on that day, as well as the interest, maturing then on the remaining certificates of that issue, amounting to $1,060.41. At that time there were outstanding certificates, aggregating $35,816.31 in principal amount, and there was on hand in cash and securities, according to their face value, the sum of $37,414.57. However, a part of these securities, aggregating approximately $6,598, are of very doubtful value, and it is unknown at this time whether the receivership will pay sufficient to make the probable deficiency good.

Defendant refused to pay plaintiff's certificates, because it considered all of the out-

standing certificates due, under the terms of the contract and under the law, and that therefore plaintiff was not entitled to the payment of his certificates in full, but that, because of the maturity of all the outstanding certificates, the cash fund on hand should be prorated among the owners of all such outstanding certificates. This reason is substantially defendant's defense.

What defendant really desires, as appears from a statement at the close of its brief, are instructions how to act. As it has reserved the funds collected since the appointment of a receiver, it has no substantial personal interest as to the outcome of this litigation.

■ When plaintiff presented his certificates for payment, all certificates maturing prior thereto had been paid by the trustee for the account of the Mortgage & Securities Company, as well as the matured interest on all others. Therefore, the Mortgage & Securities Company was not in default by reason of nonpayment, and had not been declared in default, at the time the certificates were presented. While, under the terms of the contract, the trustee has the power, with the consent of the owners of a majority in amount of all outstanding certificates, to declare in the event of a default on any certificate, all outstanding certificates in default, and to sell the pledged property, and distribute its proceeds, but in this instance, even assuming that there was a default, nevertheless defendant did not have the consent of a majority in amount of the owners of the outstanding certificates to declare such certificates in default. Therefore, defendant did not have the power, under the terms of the contract, to declare the outstanding certificates in default, and treat them as due.

■ However, defendant urges that, under the settled jurisprudence of this state, a putting in default is unnecessary in the presence of an acknowledged inability to perform. This acknowledgment has reference to the admission of the Mortgage & Securities Company in the receivership proceedings that, though solvent, it is unable to pay its liabilities as they mature. This admission refers generally to all of its liabilities and not specifically to its liability on these certificates. These are secured by collateral in the hands of the trustee, which, up to the time this declaration was made, had not failed to produce sufficient to care for the certificates as they matured, and to pay the interest as it fell due. Moreover, which is the more important reason, the effect of such a declaration in a receivership proceeding has not the effect of maturing the obligations of the debtor. If it did have that effect, it would be next to impossible to operate the receivership as a going concern, and would practically call for the winding up of the affairs of the corporation.

Defendant next urges that the appointment of a receiver, particularly as it was acquiesced in by the Mortgage & Securities Company, constituted a cession of its property within the meaning of article 2054 of the Civil Code. This article provides that a cession of property has the effect of maturing all outstanding obligations of the debtor, a certain discount, however, to be allowed where the claim is not due on its face. This article has been held to include an assignment by a corporation for the benefit of creditors. Painter v. Bank of Osyka, 140 La. 457, 73 So. 266. In C. T. Patterson Co. v. Port Barre Lumber Co., 136 La. 60, 66 So. 418, it was held, where the corporation was insolvent and its affairs were being wound up in receivership proceedings, the declared insolvency of the corporation had the effect of maturing its obligations.

It will be observed that in the Painter Case there was an assignment for the benefit of creditors, which implies a cession of property, and that, in the C. T. Patterson Co. Case, the corporation was insolvent and its affairs were being wound up and closed. In the present case, so far as appears, the corporation is solvent, or, at least, its insolvency has not been declared, and it does not appear that its affairs are being wound up as an insolvent corporation.

We think the true rule is that where a corporation is being liquidated, as an insolvent corporation, and its affairs closed by a receiver, which does not appear to be the case here, the proceeding is equivalent to a cession of property, and matures all claims against the corporation, but where the corporation does not appear to be insolvent, and it does not appear that its affairs are being wound up, the effect of the receivership is not to mature all the claims of the corporation.

In this case, when plaintiff presented his certificates for payment, the Mortgage & Securities Company was not in default, all of the outstanding indebtedness was not due, and plaintiff, according to the terms of the contract and his certificates, was entitled to payment in full out of the funds on hand.

There is some discussion in the briefs as to whether the certificates are mere evidence of an interest of ownership in the securities or are personal liabilities of the Mortgage & Securities Company. We think it clear that they are the latter, and this seems to be the view of both sides.

The trial judge rendered judgment dismissing plaintiff's demand as in case of nonsuit. We think the judgment should be reversed.

For these reasons the judgment appealed from is reversed, and judgment is rendered in favor of plaintiff against defendant for the sum of $3,045, with legal interest from September 3, 1929; defendant to pay the costs of both courts.