(48 South. 949.)

No. 17,404.

I. TRAGER CO. v. CAVAROC CO., Limited.

(March 1, 1909. Rehearings Denied March 29, 1909.)

1. BANKRUPTCY (§ 20*) — LEASE — LIEN FOR RENT—VALIDITY AGAINST TRUSTEE—RECEIVER IN STATE COURT.

The appointment, under a state law, in a state court, of a receiver to a corporation, is valid, and the administration of the receiver continues to be valid until the jurisdiction of the court is ousted by the filing of a petition to force the corporation into involuntary bankruptcy, followed by the adjudication in bankruptcy, and where a lessor has proceeded, in the receivership, to enforce his claim and lien (arising out of a contract of lease, antedating by more than four months the filing of the petition in bankruptcy) for rent, not yet due, against the proceeds in the hands of the receiver of the property found on the leased premises, the jurisdiction of the state court, quoad such claim and lien is not ousted by the filing of such petition, nor does the bankrupt law dispossess the state court of the property upon which the lien bears, though there was no rent actually due at the time that the lessee was adjudicated a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 20.*]

2. BANKRUPTCY (§ 20*) — EFFECT UPON PROCEEDINGS IN STATE COURT.

The state court having appointed a receiver to a corporation, and the receiver having come into possession of a fund derived mainly from the sale of movables found on premises which had been leased to the corporation, and the lessor having asserted his claim, lien, and right of pledge against such movables and the proceeds thereof, and the receivership then taking the form of "winding up the affairs of an insolvent corporation," which was followed by a petition for involuntary bankruptcy, such court should do no more, with respect to the fund in its possession, than determine, as between the claim of the lessor and claims arising out of the receivership, the question of preference, and enforce the lien and right of pledge of the lessor, after which the balance of the fund, if any, should be turned over to the trustee in bankruptcy, and the other claimants relegated to the bankruptcy court for the further settlement of their demands.

[Ed. Note.—For other cases, see Bankruptcy. Dec. Dig. § 20.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by the I. Trager Company against the Cavaroc Company, Limited, for the appointment of a receiver. Sol Levi was appointed receiver, and from a subsequent order directing him to turn over the property in his hands to the trustee in bankruptcy of defendant, both Levi, individually and as receiver, and plaintiff appeal. Reversed and remanded.

Charles Rosen and Lazarus, Michel & Lazarus, for appellant Levi. Rice & Montgomery, for appellant Pokorny. Dart & Kernan, for appellees City Bank & Trust Company and others.

Statement of the Case.

MONROE, J. Plaintiff, a creditor, filed a petition in the civil district court, alleging that the defendant company was insolvent, that its affairs were being grossly mismanaged, thereby jeopardizing the rights of the stockholders and creditors, and that its stockholders had declared, by resolution, that it was unable to meet its obligations as they matured, and praying that a receiver be appointed. Defendant answered, admitting that plaintiff is a creditor, admitting the adoption of the resolution referred to in the petition, but denying the alleged insolvency and mismanagement, and submitting the question of the appointment vel non of the receiver to the judgment of the court. Sol Levi was thereupon appointed receiver, and, having qualified, caused an inventory to be made and filed, obtained authority to employ counsel and to continue the business of the company as a going concern, and generally discharged the duties incidental to his position. At a later date, he filed a petition setting forth the insolvency of the company, alleging that there was no reasonable ground for believing that its affairs could be so administered as to pay its debts, and praying that he be authorized to sell its property; and, the order having been obtained, the property was sold. Thereafter he filed a provi-

sional account, showing a balance on hand of $6,000.54, after deducting from the total amount received the money actually disbursed under orders of court, against which were charged as privileged debts certain expenses of administration, such as fees, commissions, insurance premiums, etc. This account was opposed by several of the creditors, including the lessor, and at that stage of the proceeding the receiver presented to the court a motion setting forth that Cavaroc Company, Limited, had been adjudicated an involuntary bankrupt, that he (the receiver) had been elected trustee and had qualified in that capacity, and that the funds in his hands, as receiver, "except such funds as appear on said account as privileged charges of attorneys, receiver, notary public, appraiser, and other preference charges of administration," should be turned over to him as trustee. Service of this motion having been accepted by the counsel representing the parties in interest, the complaining creditors (in the bankruptcy proceeding) and the lessor answered, the latter insisting that the funds in question shall be retained in the state court until his rights with respect thereto shall have been determined, whilst the creditors take the position that the entire amount should be turned over to the trustee in bankruptcy. The court a qua gave judgment ordering the receiver to turn over the entire amount, and he, individually and as receiver, and his attorneys, for themselves and the lessor, have appealed.

## Opinion

The creditors, who have not appealed, think that the whole fund in the hands of the receiver should be turned over to the trustee, and, hence, that the judgment appealed from should be affirmed.

The receiver and his attorneys think that the court a qua should deduct from the fund the expenses of its own administration and

123 LA.—11

turn over to the trustee the balance. The lessor insists that the whole fund be retained by the state court, for the reasons that, in February, 1907, he leased to Cavaroc Company, Limited, the store, recently occupied by it, at a rental of $350 a month, for a term beginning March 1, 1907, and ending September 30, 1912, and had a lessor's privilege and right of pledge for the aggregate amount due and to become due under his contract upon the property which was contained in said store when the receiver was appointed; that he has the same privilege and right with respect to the fund in question which was derived from the sale of said property; and that his right in the premises should be determined in the court now having the custody of said fund. The receiver was appointed May 14, 1908, the petition in bankruptcy was filed July 17, 1908, and the adjudication in bankruptcy was made on August 11, 1908.

The rent notes were paid, as they matured, up to August 1, 1908, inclusive, so that when the lessee was adjudicated a bankrupt there was nothing actually due, but the lessor claims an amount "to become due" which exceeds that in the hands of the receiver.

Considering whether the fund in question should be transferred to the trustee of the lessee and the lessor compelled to follow it into the bankruptcy court, we conclude that the lessor had a lien and right of pledge and detention, to secure the payment of his rent due and to become due, upon the movables found in the leased premises, which lien and right extend to the fund in the hands of the receiver as the proceeds of said movables; that this lien and right is his property, and not that of the lessee, and was not surrendered in bankruptcy by the lessee; that, prior to the proceedings in bankruptcy the lessor, in the manner provided by law, was prosecuting, in the state court, his claim against the lessee for rent

due and to become due, and was seeking to enforce his lien and right of pledge against said movables, and against the proceeds thereof, then in the custody of the court, through its receiver, and that the bankrupt act does not devest the state court of jurisdiction of the case or confer upon the trustee of the bankrupt lessee the right to take away the fund affected by the lessor's lien until his claim has been adjudicated and satisfied therefrom. These conclusions, we think, are sustained by the following provisions of law and rulings of the courts, to wit:

"The lessor has, for the payment of his rent and other obligations of the lease, a right or pledge on the movable effects of the lessee which are found on the property leased." Rev. Civ. Code, art. 2705.

"The right which the lessor has over the products of the estate and on the movables which are found on the place leased, for his rent, is of a higher nature than a mere privilege. The latter is only enforced on the price arising from the sale of movables to which it applies. It does not enable the creditor to take or keep the effects, themselves, specially. The lessor, on the contrary, may take the effects, themselves, and retain them until he is paid." Rev. Civ. Code, art. 3218.

"When the lessor sues for his rent, whether the same be due or not due, he may obtain the provisional seizure of such furniture, or other property, as may be found in the house or attached to the land leased by him." Code Prac. art. 287.

"The plaintiff has proved that he was the lessor of the property, * * * and that the rent claimed was due. He had, therefore, a lien and a right of detention upon the property on the premises, for the security of his rent. That lien was his property and as valuable to him as if he were the owner of the property itself, and no sheriff or marshal, under execution against a third person, had any right to take away the property before paying the landlord." Robb v. Wagner, 5 La. Ann. 112.

"The lessor has a privilege as well for rent not due as for rent due, and is entitled to that privilege in preference to a creditor who has made a seizure upon execution." Robinson v. Staples, 5 La. Ann. 712; Conrad v. Patzelt, 29 La. Ann. 477.

"The syndic may, on proper showing, or proper proceeding, compel the liquidation of the pledge, by sale, so as to ascertain any possible residuum applicable to other creditors, but he does not acquire the right to demand the surrender of the pledged property into his official control and administration and subject

to the costs and charge thereof." Renshaw v. His Creditors, 40 La. Ann. 37, 3 South. 403.

Quoting from syllabus in Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481.

"(1) The district court had no jurisdiction to compel a lessor and the sheriff, by a rule in bankruptcy, to deliver up possession to the assignee in bankruptcy of goods which were in custody of the sheriff under a writ of seizure from a state court and held for the rent of the lessor; neither the sheriff nor the lessor being party to the proceeding in bankruptcy. * * *
"(3) The lessor and the sheriff had the right, under the law of Louisiana, giving a lien for rent, to the possession of the goods, for the payment of the rent, which had been seized for that purpose, before the proceeding in bankruptcy, and the assignee in bankruptcy could not take them from their possession. Where goods have been sold by the assignee, the lessor may recover of him the full value of the goods, clear of all expenses, whether the assignee realized the value or not (limited to the amount of rent that he is entitled to be paid), and taxable costs."

In the body of the opinion it is said:

"But we think it very clear that the complainant had a right to the possession that he claimed. The fourteenth section of Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), it is true, vests in the assignee all the property and estate of the bankrupt, 'although the same is then attached on mesne process, as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of such proceeding.' But this clause evidently refers to those cases of original process of attachment which only become perfected liens by the judgments which may ensue. The lessor's lien for rent on the goods of his tenant, situate on the premises, is one of the strongest and most favored in the law of Louisiana. * * * When the rent accrues, or even before it is due, if the lessor apprehends that the goods may be removed, he may have a writ of provisional seizure to the sheriff, who, by virtue thereof, takes possession of the goods and sells them, in due course, as soon as the court has recognized the amount of rent for which they are liable."

In the case of Yeatman v. New Orleans Saving Institution, 95 U. S. 764, 24 L. Ed. 589, it was said:

"In the case of Goddard v. Weaver, 1 Woods, 260, Fed. Cas. No. 5,495, it was well said that the assignee takes only the bankrupt's interest in the property. He has no right or title to the interest which other parties have therein nor any control over the same, further

than is expressly given to him by the bankrupt act, as auxiliary to the preservation of the bankrupt's estate for the benefit of his creditors. It would be absurd to contend that the assignee in bankruptcy becomes, ipso facto, seised and possessed, in entirety as trustee, of any article of property in which the bankrupt has any interest or share."

And it was held (quoting the syllabus):

"Where a pledge of property was made in good faith by the bankrupt, and for valuable consideration, and not in violation of the provisions of the bankrupt law, the assignee cannot recover the property except by redeeming it. The assignee in bankruptcy takes the title to the bankrupt's property, subject to all equities, liens, or incumbrances which existed against the property in the hands of the bankrupt, whether created by operation of law or by act of the bankrupt, except such attachments and transfers as the law avoids."

In Clarke v. Larremore, Trustee, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555, it appeared that the plaintiff obtained judgment against one Kenny for, say, $20,000, and issued execution, under which he caused to be seized certain goods and fixtures belonging to his debtor, which were sold by the sheriff, for, say $12,000; that one Abbet, shortly after the seizure, levied an attachment upon the same property, and, attacking the judgment obtained by Clarke as fraudulent, obtained an order restraining the sheriff from paying over to him the proceeds of the sale. Upon a hearing, however, the court decided that Clarke's claim was just, and set aside the restraining order, and thereupon, before the sheriff had returned the execution or paid over the money collected on it, a petition in involuntary bankruptcy was filed against Kenny, and an order was obtained from the United States court restraining the sheriff from making such payment. Thereafter, Kenny was adjudged a bankrupt, and Larremore, having been appointed trustee, the Judge of the District Court made a further order directing the sheriff to pay over said money to him, which order was affirmed by the Court of Appeals, and the matter was then taken to the Su-

preme Court, where the ruling complained of was again affirmed. In deciding the case, however, Mr. Justice Brewer (speaking for the court) was careful to call attention to the fact that the seizing creditor had no other lien to rely on than that resulting from the seizure. He said:

"The judgment in favor of petitioners against Kenny was not, like that in Metcalf Bros. v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, * * * one giving effect to a lien theretofore existing, but one which, with the levy of an execution thereon, created the lien; and as judgment, execution, and levy were all within four months prior to the filing of the petition in bankruptcy, the lien created thereby became null and void on the adjudication in bankruptcy."

In the case of Metcalf Bros. v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122 (thus referred to by Justice Brewer), it appeared that plaintiffs instituted a judgment creditors' action to set aside certain fraudulent transfers of property and a fraudulent receivership, and obtained judgment enforcing the lien, accorded them by law, on the property which was thus uncovered. It was some time, however, before the judgment was affirmed on appeal, and, within four months preceding such affirmance, their debtors filed a petition in bankruptcy. Thereafter the trustee enjoined further proceedings under the judgment so obtained, and the case, having been taken to the Court of Appeals, was certified to the Supreme Court, where it was held (quoting the syllabus):

"(1) Judgment creditors of a bankrupt, by commencing a judgment creditors' action more than four months before the petition in bankruptcy is filed, acquire a lien on the property of the bankrupt, of which they are not deprived by the bankruptcy act of July 1, 1898, c. 541, § 67f, 30 Stat. 564, 565 (U. S. Comp. St. 1901, p. 3450), because the judgment enforcing the lien is recovered less than four months prior to the filing of such petition, although, by that section, all judgments obtained against a bankrupt within that period are avoided, as this provision must be regarded as referring only to judgments granting liens, and not to judgments which enforce an otherwise valid pre-existing lien.

"(2) A court of bankruptcy is without jurisdiction to enjoin further proceedings under the

judgment of a state court in a judgment creditors' action commenced before the passage of the bankruptcy act, which set aside, as fraudulent, certain transfers of property made by the bankrupt, and directed the payment of the amount of the judgment out of the proceeds of a sale of the judgment debtor's property under an order of the state court."

In Schall v. Kinsella, 117 La. 687, 42 South. 221, property, which had been seized for rent, was in the hands of the sheriff, and the trustee in bankruptcy of the lessee intervened in the suit and claimed it.

It was held that:

"Where a lessor sues his tenant for one month's rent due him under a lease, and simultaneously seizes movables on the leased premises, under the conservatory writ of provisional seizure, the privilege which secures, in favor of the lessor, payment of the rent, does not spring from the seizure, but is a lien granted, as of the date of the lease, by the law itself. Where, pending such a suit, the defendant before judgment is adjudicated a voluntary bankrupt, * * * the effect of the adjudication is not ipso facto to abate the suit and release the seizure. * * * Should judgment be rendered in favor of the plaintiff, with recognition of the lessor's privilege, the property seized should be sold, and the plaintiffs' debt and costs paid out of the proceeds, the residue of the proceeds being turned over to the trustee."

In the case at bar, the property or the proceeds thereof were in the hands, not of the sheriff, but of another officer of the state court, to wit, the receiver appointed by that court, who held the property, not under a writ of provisional seizure, but under the law and by virtue of his appointment. The lessor, however, appeared in court and asserted the privilege that the law gives him, and that, as the property was already in custodia legis, was all that it was necessary or possible for him to do. Robinson v. Staples, 5 La. Ann. 712; Conrad v. Patzelt, 29 La. Ann. 477; Hill & Co. v. Bourcier & Pond, 29 La. Ann. 844; Am. & Eng. Enc. of Law (2d Ed.) vol. 23, pp. 1042, 1056.

We are, therefore, of opinion that the fund in dispute, upon the whole of which the lessor is asserting a privilege and right of pledge, established by law and antedating the commencement of the proceedings in bankruptcy against his lessee, should remain where it is until his (the lessor's) rights with respect thereto are ascertained and determined.

Should it be found that the privilege of the lessor secures only the rent falling due within the year following the filing the petition, or the adjudication, in bankruptcy (as the case may be) against the lessee, there will be more money than will be needed to meet his claim; otherwise there will not be enough, and a question of priority will arise between him and those whose claims are recognized on the account.

His counsel concedes that the recognized claims for certain expenses take precedence of the lessor's, though he and the other counsel differ as to what is to be included in those expenses.

Whatever it may be, if the state court is to determine the rights of the lessor quoad the fund on hand, it will be necessary for it to determine, as between him and the creditors claiming a higher privilege on that fund, as to their rights. The claims of these creditors, however (referring to those whose names appear on the account filed by the receiver), arise out of the receivership, and, as the appointment of the receiver was of itself an act of bankruptcy, we are of opinion that the question of the payment of their claims should be determined in the bankruptcy court. In other words, in arriving at the amount which may be due to the lessor, the District Court should, up to a certain point, deal with the matter as though it were governed by the state law (since, in our opinion, the bankruptcy act does not affect the lessor's rights); but, after making allowance for such claims as the state law prefers to that of the lessor, and after the demands of the lessor are (if possible) satisfied, the question of the right of the receiver, and of the others whom he has placed on his account, to be paid, or to be paid by preference, quoad

the other creditors of the estate, together with the balance of the fund on hand, should be relegated and turned over to the bankruptcy court and the trustee. Randolf & Randolf v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, and note.

We have carefully considered, in this connection, the following language (to which we have been referred by counsel) used by the Supreme Court of the United States in Re Watts, 190 U. S. 35, 23 Sup. Ct. 727 (47 L. Ed. 933), to wit:

"We do not understand it to be contended that the passage of the bankruptcy act, in itself, suspended the statute of Indiana in relation to the appointment of receivers, but only that, when the proceedings for such appointment took the form, as they did here, of winding up the affairs of the involved corporation, the proceedings in bankruptcy displaced those in the state court and terminated the jurisdiction of the latter. * * * It has already been assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent estate in the state court, but it remained for the state court to transfer the assets, settle the accounts of its receiver, and close its connection with the matter. Errors, if any, committed in so doing, could be rectified in due course and in the designated way."

But we do not deduce from it that in a case such as this, where the receivership (itself an act of insolvency) began with an admission that the corporation was unable to pay its debts as they matured, which was followed by proceedings which unmistakably took the form of "winding up the affairs of the insolvent corporation," it would be proper for a state court to undertake, in view of the subsequent proceedings in bankruptcy against the corporation, to do more, with respect to any fund in its possession arising from the sale of the property of the corporation, than to enforce pre-existing valid liens, the holders of which were asserting them when such proceedings were begun, after which the balance, if any, should be turned over to the trustee in bankruptcy.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that the case be remanded to the district court, to be there proceeded with according to law and to the views expressed in this opinion, the costs of this proceeding to be paid from the fund in the hands of the receiver.