LAND, J.
On March 13, 1912, the plaintiff sued the defendant to recover the sum of $19,238.53, representing the cash price of 392 bales of cotton, no part of which had been paid. The petition represents that the checks given by defendant for said price were worthless, and payment of the same were refused by the drawees, and that the bills of lading for said cotton were fraudulently delivered by defendant to S. Gumbel & Co., the relator. The petition represents that said cotton was in the possession of the railroads, which had issued said bills of lading.
The plaintiff represents that it is entitled to a vendor’s lien on all of said cotton under Act 63 of 1890, and prayed for a writ of sequestration, directing the seizure of the cotton and bills of lading, and also for writs of attachment. The relator and the Hibernia Bank & Trust Company and other parties were duly made garnishees. It does not appear that any of the cotton described in the petition was seized under the writ of sequestration. It appears, however, that the New Orleans, Texas & Mexico Railroad Company, as garnishee, answered that it had possession of 52 bales of the cotton; but the same was claimed by S. Gumbel & Co., Limited, as holder of the original bills of ladiug.
Gumbel & Co. excepted to the garnishment and to the jurisdiction of the court, on the ground that the defendant firm and all of its members had been duly adjudicated bankrupts in the United States District Court for the Eastern District of Louisiana on March 19, 1912.
The Hibernia Bank & Trust Company filed a similar exception. The receiver of the bankrupts intervened in the suit, and also *234 excepted on the ground that the court had been divested of all jurisdiction in the matter, and the conservatory writs issued in the suit had been dissolved by the adjudication in bankruptcy. The receiver prayed that the proceedings be dismissed and the parties relegated to the proper court of bankruptcy to determine their conflicting claims.
The court below overruled the exceptions and ordered the garnishees to answer, -for the following reasons:
“The plaintiff is seeking to enforce against specific property a vendor’s lien, which is granted by Act No. 63 of 1890, p. 51. It invoked the powers of this court at the time when no other court was open to it. The defendants were served with citation and the writs were issued and garnishment process served prior to the adjudication of the defendants in bankruptcy. As above stated, one of the garnishees has answered, admitting that it has in its possession some of the cotton on which plaintiff claims a vendor’s lien. If either or both of the two garnishees, who have filed exceptions, have in their possession, or had at the time of service herein, the balance of the cotton on which plaintiff claims a vendor’s lien, then this court seized, prior to the bankruptcy, and had under its control and subject to its jurisdiction, all of the cotton on which the statutory lien rests. But, even if they had none of this cotton, the court has seized the part admitted by one garnishee to be in its hands.
“Under the well-settled jurisprudence of this state and of the United States courts, where a state court has jurisdiction of the parties, and prior to bankruptcy of the defendant has seized the property on which the plaintiff claims a statutory lien, the jurisdiction of the state court is not ousted by the adjudication in bankruptcy of the defendant.” (Citing authorities.)
By Act No. 63 of 1890, p. 51, there was granted to any person who may sell the agricultural products of the United States in any chartered city or town of the state of Louisiana—
“a special lien and privilege thereon to secure the payment of the purchase money for and during the space of five days only after the day of delivery, within which time the vendor shall be entitled to seize the same in whatsoever hands or place found, and his claims for the purchase money shall have preference over all others.”
[1] The plaintiff contends that the cotton sold was seized under garnishment process, and, having been thus brought under the control of the state court, was subjected to its vendor’s lien and privilege.
Article 246 of the Code of Practice provides in part as follows:
“The property and effects in the possession of a third person, belonging to the defendant, or debts due by him to such defendant, shall be decreed to be levied as by the sheriff from the date of the service of the interrogatories on such persons.”
Such seizure, however, is merely constructive. The property remains in the possession of the garnishee, and the court has no authority to order its delivery to the sheriff until the plaintiff obtains a final judgment against the defendant maintaining the attachment. If the attachment be dissolved, all seizures under the writ, actual and constructive, are necessarily released.
Section 67 of the United States bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3448]) reads as follows:
“All levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of the petition in bankruptcy, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same.”
It goes without saying that the attachment sued out by the plaintiff was stricken with the nullity denounced by the federal statute, and the property affected by the attachment was discharged and released from the same. Under said section, which is the supreme law of the land, after an adjudication in bankruptcy, a state court has no jurisdiction to hold property under an attachment for any purpose. A proceeding which becomes null and void can no longer produce any legal effect. A state court cannot retain the possession of property which the federal statute declares shall be wholly *236 discharged and released from a levy, attachment, or judgment.
Counsel for the plaintiff, in their very able and learned brief, have endeavored to bring this case within the purview of authorities, federal and state, holding that, even after an adjudication in bankruptcy, a state court, in actual possession of property subject to a mortgage, pledge, or statutory lien, has jurisdiction to enforce the same by a sale of the property. We premise with the statement that in not one of the cases cited were the proceedings by attachment. The Louisiana cases involved the enforcement of the lessor’s privilege and pledge by provisional seizure or by opposition on property or funds in the actual custody of the state court. See I. Trager Co. v. Cavaroc Co., 123 La. 319, 48 South. 949. If the plaintiff had executed the writ of sequestration by the seizure of any of the cotton alleged to have been sold to the defendant, the case would be different. But this writ, specially provided by law for the enforcement of liens and privileges on movables (C. P. art. 275, No. 7), was not executed on any of the cotton described in the petition. Plaintiff also sued out writs of attachment to reach the property generally of the defendant in the hands of third persons. One of the common carriers made a garnishee admitted the possession of 52 bales of cotton described in the petition, but at the same time further answered that it was bound to deliver the same to the holder of the bills of lading covering the shipment, and that the relator held the bills of lading, and had demanded the delivery of the cotton. This constructive levy on the 52 bales of cotton necessarily fell with the attachment, and the property was released by the force of the federal bankrupt act.
It is therefore ordered that peremptory writs of prohibition issue, as prayed for by the relator in his petition.