On Rehearing.
LAND, J.
[1] The only defense set up hy the insurance companies is the suggestion that if the lumber was not “finally inspected and measured before being shipped,” as stipulated in the contract, and if the sale of the lumber had not been completed at the time of the fire, and if at said time the title to the lumber had not fully vested in the Abbott Lumber Company, then respondents owe nothing to the plaintiff.
On" September 19, 1912, the Red Cross Lumber Company entered into a contract with the Abbott .Lumber Company for the sale of 1,000,000 feet of cypress lumber, to be manufactured in such thickness as the purchaser should direct, at certain prices for different grades, f. o. b. cars at Melville, La.
It was stipulated that on the 1st to the 5th day of each month beginning December, 1912, a joint estimate should be made of the lumber on the yard of the seller, and of the grades purchased, and the purchaser agreed, to advance $12.50 per 1,000 on all such stock.
The contract then recited stipulations as follows:
“Balance due on all lumber hereby sold is to be paid as the lumber is shipped out, and invoice rendered'.purchaser, less 2 per cent, in ten days, from the gross amount of the invoice.”
“All lumber on which advances are made shall be marked up to and become the property of the purchaser and shall be held'insured by the seller for the purchaser to the extent of all said advances, and the insurance so carried by the seller for the purchaser shall in no wise divest the title of the property from the purchaser.”
“All'lumber to be shipped as the purchaser shall direct.”
“The final inspection and measurement shall in no wise be construed as affecting in any way, the title of the property as vested in the purchaser, but merely as incidental to determine the quantity purchased has been delivered on contract.”
“For $1 and other valuable considerations, the seller hereby leases to purchaser all ground on which the purchaser’s lumber is piled by the seller for the full period of time covering the completion of this contract.”
The evidence shows that this contract was duly executed by the parties, by the delivery of about 1,034,000 feet of lumber, on which the purchaser advanced or paid $12.50 per 1,000 feet. About 500,000 feet of this lumber was shipped out, and the remainder was destroyed by fire.
The evidence further shows that all of this lumber had been delivered on the leased ground, had been estimated, and stenciled, “Property of the Frank I. Abbott Lumber Company.”
The lumber was to be stacked on the yard on grade, then inspected and estimated, after which the advance of $12.50 per 1,000 feet was to be made.
The contract specifies the different grades and the prices under each. With such data, the simple deduction of $12.50 from the contract prices of the different grades will give the balance due on the lumber to be paid at the time of shipment. By the very terms of the contract, the final inspection and measurement was merely for the purpose of determining whether the quantity purchased had been delivered.
In the suit of the Red Cross Lumber Co. v. Frank I. Abbott Lumber Company, No. 20667, to recover the balance of the purchase price of the lumber shipped under the same 'contract, the plaintiff found no difficulty, in figuring out the amount due by the purchaser, to wit, $7,260.05, as shown by the detailed statements filed in the record of said suit.
It follows that the proposition that the sale was incomplete, because the contract fixed no price, is not sustainable.
The final inspection was intended to correct mistakes as to “quantity,” but it was expressly covenanted as follows:
“The final inspection and measurement shall in no wise he construed as affecting in any way the *139 title to the property as vested in the purchaser, but merely as incidental to determine the quantity purchased has been delivered on contract.”
It is an undisputed fact that more than 1,000,000 feet of lumber was delivered under the contract.
In the attachment suit the Red Cross Lumber Company, the vendor, alleged in its sworn petition that of the 1,000,000 feet, 454,-157 feet had been shipped out, and that there remained 534,685 feet unshipped at the place where delivery had been made under the contract.
These allegations are supported by the evidence in the present suit.
The unshipped lumber was destroyed by fire before it could be finally inspected and shipped. But the monthly joint inspections which had been made showed the grades, measurements, and quantity of all the lumber delivered under the contract. The sale was made perfect by these monthly inspections, and it was expressly stipulated that the title thereby vested in the purchaser should not be affected in any way by the final inspection.
The final inspection of the unshipped lumber became impossible by reason of the destruction by fire.
Hence the stipulation for such inspection became inoperative, and the monthly inspections became final. The vendor relied on these monthly inspections in the attachment suit against the purchaser; and the latter, in making his proof of loss, used the same data.
The contract in question was executed by the delivery of the lumber to the purchaser, and by the payment of the greater part of the purchase price, and we find it impossible to adhere to the conclusion that the sale was never perfected because the last inspection was not had. See McElwee v. Metropolitan Lbr. Co., 69 Fed. 302, 16 C. C. A. 232, citing Benjamin on Sales, § 329.
[2] The respective insurance companies in this case, before demand by plaintiff of payment of the amount of the insurance policies, were garnished in two attachment suits' by alleged creditors of the plaintiff. Under such conditions, the companies could not safely pay the amounts to the plaintiff. This is admitted by the counsel for the plaintiff, who, however, contend that plaintiff had the right, under Act 168 of 1908, to demand that the amount of each policy be deposited with the civil sheriff, or in the registry of the civil district court.
[3] It has been held under C. P. 246, the property remains in the possession of the garnishee, and the court has no authority to order its delivery to the sheriff until the plaintiff obtains a final judgment against the defendant. Lehman, Stern & Co. v. Martin & Co., 132 La. 234, 61 South. 212.
If the plaintiffs in the attachment suits referred to' herein could not have compelled the insurance companies to deposit the money in the court, or with the sheriff, we see no good reason in law for holding that the plaintiff, suing as an ordinary creditor, has any greater right to demand such deposit.
Section 3 of Act 168 of 1908 required payment to the assured, the only person entitled to demand and receive payment, and we do not think that the provisions of said section are applicable to the case at bar, where the insurance companies have been garnished.
Hence we are of opinion that the judgment in each of these consolidated suits should be amended by striking out the allowance therein of penalties under Act No. 168 of 1908, and, as thus amended, be affirmed, and it is so ordered and decreed; and it is further ordered that our former decree be vacated, and that plaintiff pay the costs of appeal.
PROVO STY, J., dissents.
SOMMERVILLE, J., takes no part.
O’NIELL, J., concurs in the decree.