No. 9260.
Orleans

---

MARINE BANK & TRUST COMPANY v. RAUSCH COMPANY, INC., APPELLANT.

(March 15, 1926. Opinion and Decree.)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Costs and Fees— Par. 69, 73.**

The Civil Sheriff is entitled to retain his costs and fees out of funds in his hands resulting from the execution of a writ of attachment within four months of the bankruptcy of the defendant in writ before turning the fund over to the trustee in bankruptcy. And this is true whether the costs were incurred before or subsequent to adjudication so long as no demand is made for the surrender of the fund by the trustee.

2. **Louisiana Digest—Bankruptcy—Par. 16, 19.**

There is no reason why the State court should send its officers to the bankruptcy court to receive pay for their services to which they are justly entitled and on account of which services the fund to be distributed in the bankruptcy court arose.

Appeal from the Civil District Court, Division "B", Hon. M. M. Boatner, Judge.

Action by Marine Bank & Trust Company against John P. Rausch Company, Inc.

There was judgment for plaintiff.

Defendant appealed.

Judgment amended and affirmed.

Terriberry, Rice and Young, of New Orleans, attorneys for plaintiff, appellee.

Monroe and Lemann, M. W. Heard, McCloskey and Benedict and W. O. Hart, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. The Civil Sheriff of the Parish of Orleans appeals from a judgment of the Civil District Court ordering him to turn over to defendant's trustee in bankruptcy without deduction of his costs and charges as allowed under the State law the remainder of a certain fund in his hand resulting from an attachment sued out by plaintiff prior to the bankruptcy proceedings of defendant.

On April 21, 1922, the Marine Bank & Trust Co., plaintiff herein, sued out an attachment in the Civil District Court against John P. Rausch Co., Inc., defendant herein. The Civil Sheriff in execution of the writ seized 1200 barrels of rosin. Of the rosin seized 1046 barrels had, prior to seizure, been the subject of an agreement of sale between the Rausch Co. and a corporation styled W. R. Grace & Co. With the consent of interested parties the 1046 barrels of rosin were delivered to Grace & Co. by the Sheriff and the agreed price ($3848.04) turned over to the Sheriff. Subsequently, on May 2, 1922, John P. Rausch Co., Inc., was adjudicated a bankrupt by the United States District Court for the Eastern District of Louisiana sitting in bankruptcy. On May 16, 1922, Paul Villere, the trustee in bankruptcy, intervened in these proceedings and informed the court of the bankruptcy and asked and obtained an order staying all further proceedings.

On May 12, 1923, a judgment was entered by consent of all parties ordering the Sheriff to turn over all the money and rosin in his possession to Paul Villere, trustee, "except sufficient to cover the costs and charges of the Sheriff, which are still unsettled," and the Sheriff was ordered to retain the sum of $1348.04 (the approximate amount of his costs and charges), "subject to further orders of court or agreement of parties." On June 7, 1923, the Court being moved thereto by the trustee in bankruptcy, ordered the Sheriff to turn over all "the funds and property now in his hands resulting from the seizure made in this cause, subject, however, to the partial judgment herein rendered on May 17, 1923," to Paul Villere, Trustee in Bankruptcy, and, "It is further ordered that the claim of the Civil Sheriff as against the plaintiff in suit, the Marine Bank & Trust Company, for reimbursement of his expenses and fees hereby reserved to the said Civil Sheriff and with a further reservation to the said Civil Sheriff of all his rights as against the estate of the bankrupt to be urged in the bankruptcy court."

The question is, therefore, whether the Sheriff has a right to retain out of funds resulting from the execution of a writ of attachment prior to the bankruptcy of de-

fendant in writ the costs and charges due to and expended by him in preserving the property seized before and after adjudication. It is conceded that all costs and fees due the Sheriff before adjudication can be retained and that consequently the judgment appealed from must be amended in this respect.

In answering the remaining question in the negative, we think the trial court overemphasized what was said by our Supreme Court in Lehman Stern & Company vs. E. Martin & Company, 132 La. 231, 61 South. 212. It was there held:

"That all attachments sued out against an insolvent within the four-month period are a nullity in view of Section 67 of the U. S. Bankruptcy Act of 1898, and that a state court has no jurisdiction whatever in view of such adjudications."
and

"It goes without saying that the attachment sued out by the plaintiff was stricken with the nullity denounced by the federal statute, and the property affected by the attachment was discharged and released from the same. Under said section, which is the supreme law of the land, after an adjudication in bankruptcy, the State Court has no jurisdiction to hold property under an attachment for any purpose. A proceeding which becomes null and void can no longer produce any legal effect. A State court cannot retain the possession of property which the federal statute declares shall be wholly discharged and released from a levy, attachment, or judgment."

It is one thing to say that the attachment is null when sued out within four months of bankruptcy and that the Court is divested of jurisdiction by the fact of bankruptcy, and quite another thing to hold that the officers of the court are not entitled to collect their lawful expenses which originated in the execution of orders issued by the Court when its jurisdiction could not be questioned and continued after the divestiture of jurisdiction because of the

laches of the trustee in bankruptcy, and were occasioned by the preservation of the property of the bankrupt. The expenses claimed by the Sheriff as being due subsequent to adjudication were for keepers' fees and insurance of the property and were necessary and proper for its protection and preservation until claimed by the trustee in bankruptcy. The same reasoning which would deprive the Sheriff of expenses subsequent to adjudication would also deprive him of expenses prior thereto. Because if the attachment is annulled by the fact of bankruptcy, under the bankruptcy act it is made retroactive, and if the attachment was sued out within four months of bankruptcy, as was the case here, it is null ab initio. Consequently by a parity of reasoning the Sheriff has no more right to fees and expenses incurred before adjudication and within four months than he has for fees and expenses incurred subsequent thereto. But he is entitled to both, as we see it.

The following authorities to which we have been referred by counsel we think appropriate here, though it does not always appear what expenses and charges were under consideration and when incurred with relation to the adjudication.

In the case of Wilson vs. Parr, decided by the Supreme Court of Georgia, and reported in Vol. 8, A. B. R., p. 230, the Court held that where a receiver of a partnership was appointed by the State Court and the partnership later was adjudicated a bankrupt, the receiver, while pledged to turn over the assets of the partnership to the trustee in bankruptcy, should first deduct from them the costs and expenses incurred by him in marshaling the assets of the partnership. The Court said:

"It seems to us eminently proper for the costs and enumerated expenses of the receivership in the State Court to have been ordered paid from the fund before the same

was turned over to the trustee in bankruptcy. The services of the receiver and his attorneys enure to the benefit of the creditors of the bankrupt. They were rendered under the order of the said Court and the fund in that Court was the result of the services of the receiver and his attorney acting under orders of the Court and ought to be paid."

\*          \*          \*          \*

"There is no reason why the said Court should have sent its officers to the bankruptcy court to receive pay for their services to which they were justly entitled, and from which the fund to be distributed in the bankruptcy court arose."

The Supreme Court of Rhode Island has held to the same effect. Mauran vs. Carpet Lining Company, 6 A. B. R. 734, 50 Atlantic 331. After ordering the receiver to turn over the funds to the trustee in bankruptcy, the Court said:

"In so doing, however, the question of proceedure arises, whether the expense incurred shall be paid out of the fund, or whether the whole fund shall be surrendered, and our receivers sent to the Federal Court to ask for his fees and expenses. We think that the former is the proper course."

In the case of Popkin · & Company, Bankrupts, 38th American Bankruptcy Reports, page 20, the court said: "After adjudication the Sheriff must deliver the property to the receiver or trustee in bankruptcy upon the payment to him of his lawful fees and poundage."

The Popkin case specially affirmed the case of Schmidt & Company, Bankrupts, 165th Federal Reporter, 1065, where this language was used: "We are satisfied that the language used by Congress in the sixty-seventh section of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 U. S. Comp. St. 1901, p. 3450), providing that levies under judgment within the period named 'shall be deemed null and void,' was not intended to deprive state officers of their statutory fees, accruing prior to

bankruptcy, under proceedings in the state courts, which were in all respects regular and in accordance with the state law and practice. The order is affirmed."

The amount due the Sheriff is not disputed. It is fixed at $1216.98.

For the reasons assigned the judgment appealed from is amended so as to permit the Civil Sheriff to retain in his hands the sum of $1216.98 out of the funds resulting from the seizure made in this cause as fees and costs due him before surrendering the balance of said fund to Paul Villere, Trustee in Bankruptcy of the defendant, John P. Rausch Co., Inc.