JUAN GREGORIO FUNES Y CARILLO *v.* THE PRESIDENT, DIRECTORS, AND
COMPANY OF THE BANK OF THE UNITED STATES.

An actual bankruptcy or *cessio bonorum*, either voluntary or forced, alone has the
effect of rendering immediately exigible debts not matured by the lapse of the time
stipulated in the contract, or by the happening of the contingency on which the
parties agreed that they should become payable. The mere fact of the insolvency
of the debtor does not produce such an effect. C. C. 2049.
Where a debt is payable at a particular place, a demand by the creditor there, is a
condition precedent; and must be made before instituting suit.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
This action was commenced by attachment. The petition al-
leges that the President, Directors and Company of the Bank of
the United States, a corporation created by the State of Penn-
sylvania, located in the city of Philadelphia, holding property
within the juridiction of the court, are indebted to the petitioner
in the sum of $48,400, with interest at five per cent a year,
from the 1st April, 1837, he being the holder and owner of ten
promissory notes, or bonds, each for £1,000, drawn by the de-
fendants, payable to bearer, in London, on the 1st April, 1847,
with interest at five per cent a year, payable semi-annually at
the office of F. Kuth & Co. That the defendants have failed and
refused to pay the interest due on the 1—4 April and October of
each year, although legally demanded of them. That since the
making of said notes, the defendants have become notoriously
insolvent; and have made, at Philadelphia, assignments of all
their property to certain preferred creditors to the exclusion
of the petitioner, in consequence whereof he has lost all secu-
rity for the payment of his debt. The petition concluded by
praying that W. W. Frazier and C. Adams, as receivers of the
assets of the defendants, Robert Copeland, and others be made

garnishees, and ordered to answer certain interrogatories pro-
pounded, with a view to ascertain whether they were indebted
to the defendants, or had any property of the latter in their
hands or under their control.

The defendants answered by a general denial; averring, fur-
ther, that they have no property within the jurisdiction of the
court. They prayed that the attachment and suit might, con-
sequently, be dismissed.

John Bacon and certain other persons residing in Philadelphia,
intervened, representing that the plaintiff had caused an attach-
ment to be levied upon property belonging to the intervenors,
and had garnisheed certain persons who are their debtors, and
not the debtors of the defendants. They aver that said property
was assigned to them, long before the attachment, by certain
deeds, which they offered in evidence. They pray that the pro-
perty may be deemed to belong to them as such assignees; that
the attachment may be dissolved, and the garnishments set aside;
and that the proceedings of the plaintiff be adjuged unlawful; but
should the court be of opinion that their title can be investigated,
without the instituion of a revocatory action, they pray that the
said assignments may be declared legal and valid; and for all
equitable relief.

In answer to this intervention the plaintiff, after a general
denial of all the allegations therein contained, averred that at
the time of the assignments the defendants were notoriously
insolvent, and are so still; that the assignments were never
assented to by him, and were made in fraud of his rights, and
operate to his injury; that he was a creditor of the defendants
at the date of said assignments; and that they were illegal and
fraudulent, and made with intent to hinder, delay, and defraud
him. He prayed that the intervention might be dismissed.

The case having turned on other questions, the answers of
the garnishees, and other evidence of property having been at-
tached, are immaterial. The judge below was, however, of
opinion that the title to certain real property was yet in Frazier,
one of the garnishees, and that the court had, consequently,
jurisdiction. The bonds were introduced in evidence, and the
signatures to them proved. The evidence taken on behalf of

the plaintiffs and interveners in the suit of *The United States* v. *The Bank of the United States* (8 Robinson), was also introduced in evidence. It was agreed that the laws of England might be proved by elementary treatises, and the Reports ; and those of Pennsylvania, by Purdon's Digest, and the printed statutes and decisions of its courts.

W. W. Frazier, a witness for the plaintiff, deposed that he had no certain knowledge on the subject, but that, in his opinion, from the embarrassed condition of the Bank of the United States, there is not the slightest probability that the bank had, in April last, or since, any money in London to meet the interest-*coupons* of the bonds sued on.

Burnley, another witness introduced by the plaintiff, testified that the bonds sued on were given to Fred. Kuth & Co., of London, who advanced the money to the Bank of the United States at the date of the bonds ; that he understood and believes that no pledge or other security was given by the bank at the time, or has been since given, to secure the payment of the bonds, or the interest due or to become due ; that Kuth & Co. are bankers and merchants in London, and continued to hold said bonds until 1842, when they were transferred to the plaintiff ; that two or three interest-*coupons* next preceding the one which first matures of those now attached to the bonds sued on, are unpaid, and were cut from said bonds in Philadelphia, and there presented to the bank for payment ; that neither they nor the *coupons* attached to the bonds have ever been paid, and were all forwarded to this country for collection, because there was no money or assets of the bank in England to pay the interest-*coupons*, and because the bank had become notoriously insolvent, and had made the assignments of 1841. He further deposed, that he had been informed and believes that, neither at the maturity of the said *coupons*, nor since, has the bank had any money or assetts at the place of payment of said bonds and *coupons ;* that he is morally certain that the facts stated by him are true, though he has not been in England since 1842 ; that at least one of the interest-*coupons* of said bonds was due and unpaid for want of funds, while F. Kuth & Co., held said bonds.

In answer to a question of the counsel for the defendants,

whether he knew, of his own knowledge, that any of said *coupons* were presented at maturity at the place designated for payment, or have been so presented at any subsequent period, he stated—that all he can say is, that said *coupons* were in the possession of Kuth & Co.; that they could not present them but to themselves, and that no offer was made to pay them; that the reason why he says that they were in possession of Kuth & Co. at maturity, is only because Kuth & Co. told him so, and because the plaintiff received them from Kuth & Co., but that he has no personal knowledge of the fact. He added, that he has a personal knowledge of the fact that some of the *coupons* remained unpaid after maturity; that he brought them back unpaid to this country; and that demand of payment was made of the bank at Philadelphia, but unsuccessfully.

There was a judgment below against the plaintiff, as in case of non-suit, on the ground that there was no proof of demand of payment of the *coupons* at the place designated, and no allegation or proof of any fact entitling the plaintiff to anticipate the day of payment of the principal debt, which becomes due only on the 1st of April, 1847. The plaintiff appealed.

*B. Peyton* and *I. W. Smith*, for the appellant. The judge below erred in considering the debt sued on as not due and payable. The objection, taken verbally on the trial, under the answer of the general denial, came too late. Code of Practice, art. 333. 8 La. 589.

If it had been pleaded by the defendants, the testimony shows that, under the laws of the State of Pennsylvania, the bank had ceded all its property, with a few trifling exceptions made to prevent the forfeiture of its charter, to trustees for the payment of its debts. This was, in effect, a technical insolvency of the bank. It had previously been in an insolvent state; and by this act, it placed all its property beyond its control, and attempted to create preferences on the real estate situated in this State, which are considered as a fraud upon the rights of the plaintiff, and are forbidden by our laws. In *Atwell* v. *Belden*, (1 La. 504), this court says: "The fact of insolvency being established by the evidence of the case, we consider the situation of the debtors as analogous to that of persons who make a ces-

sion of their property to their creditors, from which the legal consequence is, that all debts may be exacted, as well as those which had time granted for their payment, as those actually payable." In the case now before the court, as in *Atwell* v. *Belden*, the objects of the suit were to obtain a judgment, and the evidence received without objection authorises one, against the defendants; and also for a privilege on the property situated here, and fraudulently conveyed by the defendants.

The court erred in deciding that a demand of payment of the bonds and *coupons* was necessary, before the plaintiff could bring suit on them. The bonds are payable generally, " in London." As to them, no decision has ever gone so far as to consider a demand necessary. The *coupons* are made payable at the office of F. Kuth & Co., in London. No demand was necessary as to these, because this court has always considered that the clause in every obligation, whether negotiable or otherwise, stating that payment is to be made at a particular place, is to be interpreted, agreeably to our system of jurisprudence, which fixes the domicil of the debtor for the place of payment (Civil Code, art. 2153), as a condition precedent, created by the parties, making the obligation conditional, which would otherwise be absolute. This rule of interpretation as to the obligations flowing from the contract, has never been applied by this court to any other contracts than such as were made in this State and were to be executed here, or to such as were made elsewhere, or to be executed elsewhere, and where there was no proof of the *lex loci contractus*, or of the *lex loci solutionis* being different from the law of this State. 3 Mart. N. S. 423. 10 La. 552. 12 Ib. 472. 14 Ib. 181. 15 Ib. 242. 1 Rob. 84, 311. 3 Ib. 395.

Whether this demand is necessary or not, does not depend on the *lex fori*, but on the *lex loci contractus*, or the *lex loci solutionis*. Story on Bills, pp. 141, 152, 157–9. In this case the law of Pennsylvania, where the bonds and *coupons* were made, and of England, where they were to be paid, are in evidence, and demand is not required by either law. 2 Watts & Sergeant's Rep. 462. 7 Watts' Rep. 382. Chitty on Bills, pp. 639, 396. 3 Kent's Com. p. 100.

If demand were otherwise necessary, it could not be required by reason of the insolvency of the bank, of the Pennsylvania assignments, of there being no funds at the place of payment as the *coupons* matured, of the possession and ownership by Kuth & Co. of the bonds and *coupons* when several of the latter matured, and of the demand and refusal of the bank at Philadelphia. It cannot be maintained that the Philadelphia assignments can validly transfer land in this State. If the objection could have been taken, that a distinct suit should have been brought to annul the transfer to Frazier, it was waived by the intervention of the trustees, and by the validity of the assignments being put at issue on the merits by the pleadings and the evidence.

*T. Slidell,* for the defendants and intervenors.

If it should be said that the assignments gave preferences—that this was an interest in real estate, and should be tested by our laws, we reply that the plaintiffs have no right to treat the assignment as null—they should have instituted a revocatory action. They cannot proceed by attachment and garnishment, and so try the validity of the assignment. See the cases cited in Benjamin and Slidell's Digest, Insolvency, K.

Moreover an revocatory action cannot be carried on by way of garnishment. Such a proceeding cannot be substituted for a direct revocatory action. *Taylor* v. *Whittemore,* 2 Rob. 99.

In this case had the revocatory action been instituted, it would have been barred by the prescription of one year.

This action is evidently untenable so far as regards the bonds sued upon.

Even in case of a Louisiana contract, a debt payable at a future day does not mature by effect of law, except in case of *technical* insolvency, and even then the creditor comes into the *concurso pro rata,* and is not permitted, as is sought in this case, to lay hold of the property entirely for his own benefit.

No principle exists in the law of Pennsylvania, or of England, which creates this anticipated maturity.

As regards the *coupons* or interest warrants, the plaintiff has not made out the case, because they have not proved a demand at the office of Kuth & Co., where the warrants were specially

made payable by their very terms and by the body of the bond. This court has uniformly held that such presentment is indispensable, and has refused to change its opinion, in spite of the decision of the Supreme Court of the United States and of other tribunals.

In the case in 1 Rob. 311, the court reiterating this familiar principle, also intimated that the matter is one pertaining to the remedy, and to be governed by the *lex fori*. "If it were shown to be a rule of evidence in that State, it would still be questionable whether it would authorize us to disregard the settled jurisprudence of our own State, which is that whenever a note is made payable at a particular place, payment must be demanded there before a recovery can be had on it." See also the decision of the court in *Buckner* vs. *Watt*, 19 La. 217.

But if this be not a question to be determined by the *lex fori*, but by the *lex loci contractus*, then the law of England governs the matter, and not the law of Pennsylvania, because the contract was to be performed in England. *Lapice* v. *Smith*, 13 La. 92.

Now by the law of England, a demand at the place designated for payment of the note, is necessary.

It was so held by the House of Lords in *Rowe* v. *Young*. See Byle on Bills of Exchange, p. 125. In consequence of this decision, parliament passed the act of 1 and 2 Geo. 4, c. 78, by which it is declared, that an *acceptance*, payable at a particular place, is a general acceptance, unless expressed to be payable there only, and not otherwise or elsewhere. But this statute, says Byle, p. 126 (Law Library, vol. 16), does not extend to promissory notes. If therefore a note be in the body of it made payable at a particular place, it is still necessary to aver and prove presentment thereof.

It has been attempted to be shown in this case that the bank had no funds at the place designated. The plaintiff partly relies on the evidence of the assignments. But those assignments did not cover the property in Europe. He also relies on the evidence of Frazier and of Burnley. What these witnesses state is merely as to their impression and belief. This is not evidence. Their testimony is so insufficient as to require no comment.

The same may be said of the attempt to show that Kuth & Co. were holders of some of the warrants at maturity. It is mere evidence of belief and hearsay evidence.

But though there were sufficient proof that there were no funds deposited at the place of payment, where is the rule of law in England that this excuses demand? The rule exists there as to bills of exchange, but we do not find any such rule as to promissory notes.

MARTIN, J. The plaintiff is appellant from a judgment of non suit on his claim for $48,400 and interest, the amount of ten post-notes of the defendants, neither of which is as yet payable. It has been, however, contended, that the bank is notoriously insolvent, and that, therefore, the debts which it owes are all exigible. The first judge has, in our opinion, correctly held, that an actual bankruptcy or *cessio bonorum*, either voluntary or forced, alone has the effect of rendering immediately exigible debts which have not yet matured by the lapse of the time stipulated in the contract, or the happening of the contingency on which the parties agreed that they should become immediately payable. Civil Code, art. 2049. 8 La. 585. As to the terest, which was payable semi-annually, and at a particular place in London stated in the coupons, the judge has conformed himself to the jurisprudence of this court, which is, that when a debt is made payable at a particular place, a demand by the creditor there is a condition precedent, which must be complied with, before the institution of any suit. 12 La. 473.

The plaintiff has attempted to justify his preceeding on the *coupons*, by the introduction of a witness stating circumstances which authorize it. But this gentleman has not mentioned any thing tending that way, from his personal knowledge.

*Judgment affirmed.*