LAND, J.
There are two appeals in the above-entitled proceeding from the judgment homologating the account of the receiver.
We will first consider the appeal of Joseph Dubourdieu, lessor of the premises occupied by the defendant company, who filed an opposition to the receiver’s account, which sets forth, in substance, facts as follows:
In December, 1908, Dubourdieu leased to the O. D. Craighead Company a certain tract of land in the parish of St. Landry, containing 200 acres, with the buildings and improvements thereon, consisting of a residence and eight tenant houses.
The lease was for the period of 20 years beginning on December 7, 1908, for the price of $1,000 per year payable in advance.
On February 27, 1909, the Craighead Company sold to the Fort Barre Lumber Company all of its property situated in the *63 parish of St. Landry, and particularly its property located on the leased premises as shown by exhibit annexed to the opposition.
By the terms of the act of sale 'the Port Barre Lumber Company obligated itself to pay all the debts and obligations of the Craighead Company, and more especially the amounts due the opponent under the terms of the lease.
That since said sale the Port Barre Lumber Company has been placed in the hands of the Interstate Bank & Trust Company, as receiver, which has paid to opponent the rental due him up to December, 1913, leaving a balance of $16,000 to become due under the terms of the said lease.
The opponent alleged that he had a privilege and pledge on all the property on the leased premises to secure the payment of said sum of $16,000; that said receiver had ap-' plied for and obtained an order for the sale of all the property belonging to said company, and the sheriff had advertised the same for sale in bulk at public auction; that the opponent had the legal right to have the property on which he claims a lessor’s privilege and pledge appraised and sold separately.
Opponent prayed for judgment against said company for said sum of $16,000, with recognition of his privilege and pledge, and ordering a separate appraisement and sale, and that the receiver pay his said claim by preference out of the proceeds of said sale.
The court ordered a separate appraisement and sale as prayed for by the opponent.
The property was separately appraised and sold to J. A. Folse for a large price, far in excess of the claim of the opponent.
The judgment below maintained the opposition of Joseph Dubourdieu to the extent of $1,000, with privilege, and dismissed the same as to the remainder of the sum claimed, with reservation of all his rights.
Opponent has appealed from said judgment. The theory of the judgment seems to be that, quoad the unmatured installments of rent, the remedy of the opponent, in case of nonpayment, was by suit against the purchaser, or other occupant of the leased imemises.
[1] A conclusive answer to this theory is that, under codal law, all debts due by the insolvent are deemed to be due, although contracted for a term not yet arrived; but in such a case a discount must be made of the interest at the highest commercial rate, if none has been agreed on by the contract. C. C. art. 2054; Millaudon v. Foucher, 8 La. 586; Funes y Carillo v. Bank, 10 Rob. 533. As tersely expressed in McBride v. Crocheron, 5 Mart. (O. S.) 144, “the debt becomes payable by the insolvency of the debtor.”
Hence the claim of the opponent, less a discount at 8 per cent, per annum, became payable when the receiver was appointed. From a calculation in opponent’s brief it appears that opponent’s claim, less discount, amounts to $11,213.71; and his opposition must be decided on the assumption that said amount is due and payable.
[2] Opponent’s lessor’s privilege and pledge covers the movables and constructions on the leased premises. C. C. art. 2705 et seq.; Brunner Co. v. Rodgin, 130 La. 358, 57 South. 1004.
A legal sale in insolvent proceedings discharges all liens in favor of creditors, parties to the concurso. See Williamson v. Creditors, 5 Mart. (O. S.) 620. Such liens attach to the proceeds of sale, and the purchaser of the property takes it free of such incumbrance.
In Trager v. Cavaroc Co., 123 La. 319, 48 South. 949, the lessor’s privilege for rent due and to become-due was recognized and enforced on the proceeds of a receiver’s sale of the movables on the leased premises, even against the lessee’s trustee in bankruptcy. The lessor has a right of pledge “for the payment of his rent, and other obligations of the *65 lease.” C. C. art. 2705. The lessor suing for rent, whether the same be due or not due, may obtain the provisional seizure of such furniture or property as may be found in the house or attached to the land leased by him. C. P. art. 287.
In this court, J. A. Folse, a creditor of the defendant company, and the purchaser of the unexpired lease, opposes the lessor’s claim of Joseph Dubourdieu. The order of sale was granted on the motion of said Folse, and included, among other property, “the hereinafter described buildings and improvements on the mill site of said Port Barre Lumber Company, erected by it on the land held under lease by said company from Joseph Dubourdieu, date December 18, 1908, for twenty years,” etc. The order of sale also included “the right of the said Port Barre Lumber Company to the said lease for the remainder of the unexpired term thereof.”
The property on the leased premises, and the unexpired lease were adjudicated to J. A. Folse, who complied with the terms fixed by the order of sale.
After having caused the unexpired lease to be sold as the property of the Port Barre Lumber Company, Folse, the purchaser, argues in this court that said company never acquired said lease from the Craighead Company, the original lessee, but merely assumed the payment of the rent.
The record shows that the Port Barre Lumber Company was formed by the merger and consolidation of the Craighead Company and the Labarre Riggs Company, and that the Craighead Company transferred, in general terms, to the Port Barre Lumber Company all of its property, real and personal, rights, claims, credits, and assets of whatsoever nature and character, and the Port Barre Lumber Company on its part assumed all the debts and liabilities of the Craighead Company.
Under this transfer, the Port Barre Lumber Company took possession of the leased , premises and erected many and valuable improvements thereon,' and paid the rent as it matured. Hence as a matter of fact the Port Barre Lumber Company acquired the unexpired lease of the Craighead Company. on February 27, 1909.
It is unnecessary to consider the legal right of Folse to attack his vendor’s title on the face of a record which raises no such issue.
Folse, as purchaser, is not concerned with the distribution of the proceeds of sale.
Folse, as creditor, may contest the claim of the lessor both as to amount and privilege. The amounts due and to become due are $1,-000 per annum, for the years commencing December 7, 1913, and ending December 7, 1928. The privilege and pledge of the lessor on the proceeds of the sale of the property on the leased premises to secure the payment of said amounts cannot be disputed. We think that the declared insolvency of the lessee caused said amounts, less the discount fixed by law, to mature. If not, then the proceeds of sale must be held in the registry of court and paid out to the lessor as the installments of the rent fall due. Folse and other creditors have no interest in the retention of said proceeds in the registry of the court for from one to fifteen years. In order to settle up insolvent estates as soon as practicable, the law has wisely provided that all claims of creditors shall be deemed to mature as of the date of the insolvency. The discounting of claims not due places all creditors on the same footing, and enables the court to distribute the assets without unreasonable delay.
[3] Act 128 of 1894 applies only to leases of buildings used wholly or in part for mercantile purposes. In'the case at bar the lease was of 200 acres of land on which there was no building suitable for mercantile purposes.
Hence said act has no application. However, it may be noted that the limitation *67 therein of the lessor’s lien to one year after the death or failure of the lessee does not “deprive the landlord of his privilege upon the effects of the leased premises, belonging to the purchaser, of the lease for the unexpired term, at succession, sheriff’s or syndic’s sale, except in case of the insolvency or decease of said purchaser.”
Counsel on both sides differ widely as to the cash value of the unmatured rents, as shown by their respective statements, hereto attached. The difference in the results is so marked as to suggest error in the basis of calculation.
The first item due December 7,1913, is conceded not to be subject to discount. The statement of the opponent allows $80 as interest on this item, and no discount on the item due December 7, 1914, on the theory that the latter is “the maturity date,” and opponent made December 7,1914, as the basis of his calculations. The insolvency matured the claim for rents, and the date cannot be fixed later than December 7, 1913, when the corporation first defaulted in the payments.
The fixing of December 7, 1914, as the date of maturity, necessarily excludes one year from the calculation. We find no warrant for the charge of interest, or for taking December 7, 1914, as the maturity date. We adopt the calculations submitted by counsel for J. A. Eolse.
We therefore are of opinion that judgment be rendered in favor of the opponent lessor for $10,588.25, with recognition of his privilege and pledge as prayed for.
[4] Opposition of Gustave, G. Labarre to the sum of $7,500 allowed Robert H. Marr, attorney for the receiver:
The grounds of this opposition are that the sum .allowed is not according to agreement, and is out of all proportion to the value of the services rendered.
The opposition was dismissed, and the opponent has appealed.
The claim of Judge Marr was allowed by the receiver, and appears to have been acquiesced in by a very large majority of the creditors. The evidence shows that the fee claimed is very reasonable for the important services rendered by Judge Marr during four years in the liquidation of a corporation, whose assets were'estimated'to be worth $400,000. In the argument of. the case before us, counsel for the opponent admitted that Judge Marr’s services were well worth the fee allowed by the receiver.
There was before the institution of the receivership proceedings in 1909 an agreement, for a fee of $1,500, made between Judge Marr and the president of the Interstate Bank & Trust Company, which was subsequently appointed receiver. Judge Marr testified that this agreement was based on the legal services contemplated at the time, namely, the appointment of a receiver, the issuance of receiver’s certificates, the payment of creditors, and the return of the property to the corporation, all of which could have been done within 60 days. Judge Marx-further testified that the refusal of the court to authorize the issuing of more than $30,000, of certificates forced the corporation into insolvency ; and that thereupon he notified the receiver, through its president, that he would demand additional compensation for his services in the matter of the liquidation of the concern.
Mr. Dinkins says in his testimony:
“It was supposed, that in a reasonable time the property would be re-financed and restored to its owners. * * * I think Judge Marx- has done more work than was contemplated, though I can’t say I ever acquiesced in the fee charged.
“Q. But you are satisfied that a great deal more work was done in this matter than was, contemplated at the time of his employment?
“A. Yes, sir; no question about that.”
The agreement for a fee of $1,500 was-necessarily limited to the legal services contemplated by the parties at the time of the contract. The services in the mind of the *69 parties was the re-financing of the corporation by means of receiver’s certificates. The liquidation of the affairs of the corporation as an insolvent concern was not contemplated by the parties. The comparative smallness of the fee indicates that the contemplated legal services were limited, 'and did not include fees for winding up the corporation as an insolvent concern. We are satisfied from the evidence that Judge Harr did not agree to accept $1,500 for legal services which, it is admitted, were well worth $7,500. The testimony of the opponent and his witness are too vague and unsatisfactory to affect this conclusion.
It is therefore ordered that the judgment below dismissing the opposition of Gustave G. Labarre be affirmed, with costs of appeal.
It is further ordered that the judgment below on the opposition of Joseph Dubourdieu be reversed; and it is now ordered that said opposition be maintained to the extent of $10,588.25, with legal interest thereon from December 7, 1913, until paid; and it is further ordered that the said opponent be paid by preference out of the proceeds of the sale of the property on the leased premises, said sum and interest, with costs in both courts.
SOMMERVILLE, J., takes no part.
O’NIELL, J., concurs in the decree.