169 So. 562

Succession of MARINONI.

No. 33465.

June 30, 1936.

Miller, Bloch & Martin, of New Orleans, for appellant Wm. T. Nolan.

McCloskey & Benedict, of New Orleans, for appellee Judge Michel Provosty.

HIGGINS, Justice.

This is a suit by an attorney at law for a fee of $5,000 alleged to have been earned on a quantum meruit basis. The defense is that the plaintiff volunteered to act as one of the attorneys for the executors of the succession of the deceased, without compensation, and rendered the services for

which the fee is now claimed under that arrangement without any subsequent modification. In the alternative, the executors plead that the amount claimed is excessive, since the legal services were not rendered by plaintiff alone, and the decision in the litigation secured favorable to the succession was reversed on the original hearing in this court, but, after plaintiff withdrew as an attorney, due to his election as a judge of the civil district court, on rehearing the judgment of the trial court was affirmed.

There was judgment in favor of the plaintiff for the sum of $2,000, and the executor, William T. Nolan, appealed. The Canal Bank & Trust Company was placed in liquidation and is out of the case as coexecutor.

The record shows that Ulisse Marinoni, Jr., an attorney at law, died on September 12, 1931, leaving as widow in community, Adina Provosty Marinoni, sister of the plaintiff here. The deceased's sister, Mrs. Olga Marinoni, was married to William T. Nolan, one of the executors. Plaintiff, in behalf of his sister, filed a petition instituting a search for the will of the deceased, who was his associate in the practice of law. The will was found and probated. The deceased appointed his brother-in-law, William T. Nolan, and the Canal Bank & Trust Company as testamentary coexecutors. He named his sister, Mrs. Olga Marinoni Nolan, as universal legatee of his estate. Mr. Felix J. Puig, a lifelong friend of the deceased, and plaintiff's brother-in-law, agreed to act as attorneys for the executors, without compensation, and all parties concerned concurred in this arrangement.

During October, 1931, Mrs. Rita Lewis, through her attorney, informed plaintiff of her claim as the legitimate offspring of the deceased, resulting from an alleged Mississippi common-law marriage with Mrs. Lewis' mother. Efforts to compromise the matter failed, and on April 20, 1932, she instituted suit, claiming as forced heir of her deceased father, praying "that the last will and testament of the deceased be declared null and void and of no effect, insofar as it purported to recognize Adina Provosty as the deceased's wife and widow in community," etc., "and that she be recognized as a forced heir of deceased." Plaintiff then informed officers of the Canal Bank that, in volunteering his services to open and close the deceased's succession, without compensation, it was never contemplated that a serious lawsuit such as was presented would be involved, and that, since it would take practically all of his time for an indefinite period, he would not continue to represent the executors in the Lewis litigation without a fee being paid him. He wrote a letter to that effect to Mr. Johnson, one of the assistant trust officers of the Canal Bank, and delivered a copy thereof to Mr. Puig, coattorney for the executors. Mr. Puig suggested that the matter be taken up with the parties interested at a conference. Mrs. Nolan, universal legatee, employed Henry P. Dart, Sr., attorney, to represent her in the succession and in the Lewis suit, and at a conference in which Mr. Dart, Mr. G. F. Niebergall, trust officer of the bank, D. Allen Johnson, assistant trust officer of the bank, Mr. William T. Nolan, coexecutor, and plaintiff were present, plaintiff made it clear, according to

the testimony of all these parties, that, as the Lewis suit was not contemplated or expected at the time he volunteered his services without compensation, and that as it would take considerable effort, time, and involve serious responsibility to properly defend the case, he would not continue as an attorney for the executor in the Lewis litigation without being paid a fee. Mr. Nolan wanted to know what he "meant by compensation" and about how much he would expect. Mr. Dart remarked, "Oh, let's go on with the thing that we came here for (the defense to the Lewis suit) and *discuss the matter of compensation later.* Let's get to work on this answer." (Parenthesis and italics ours.) He also stated that he favored lawyers being paid fees for their services. From that time it appears that Mr. Provosty took the lead in defending the estate against the claim of Mrs. Lewis, filing exceptions of nonjoinder, vagueness, and no cause of action, all of which were sustained in the trial court, after different hearings and arguments. On appeal, he wrote the brief, after a thorough and exhaustive research of the law and investigation of the facts and conferring with his colleagues. He made the principal argument in the trial court, as well as here.

This court annulled the decision of the district court, overruling the exceptions of no cause of action, and remanded the case for trial on its merits. Plaintiff then, having been elected as a judge of the civil district court, withdrew from the litigation, and Messrs. Borah and Bloch were employed as attorneys, and succeeded in having us grant a rehearing. On rehearing, we set aside our original opinion and reinstated the judgment of the district court sustaining the exceptions of no cause or right of action, and dismissing Mrs. Lewis' suit.

A reading of the final decision of this court and the voluminous brief prepared by plaintiff shows that plaintiff's interpretation and views of the legal problem presented, as to whether or not the laws of Mississippi recognized common-law marriages at the time the alleged common-law marriage relation between the deceased and Mrs. Lewis' mother is said to have taken place, were adopted by us.

In the case of C. T. Patterson Co. Ltd., v. Port Barre Lumber Co., 136 La. 60, 66 So. 418, Judge Marr agreed to act as an attorney in a certain receivership proceeding for a fee of $1,500, expecting that the proceedings would be completed within about 60 days. Subsequent developments over which none of the interested parties or attorneys had any control forced Judge Marr to do a great deal more work than was originally contemplated, and he sued for an additional fee, which was granted in the sum of $7,500 by the court.

There is no doubt that the Lewis suit was neither foreseen nor contemplated at the time plaintiff volunteered his services without pay. When this involved and serious litigation arose, he informed the co-executors that he would not represent them without being paid a fee. They permitted him, without the slightest intimation that he was not to be paid, to go forward as leading counsel in defending the suit, and to do a great amount of work which required considerable time and effort. Plaintiff,

therefore, reasonably concluded that he was to be paid for the services that he might render in behalf of the executors in defending the suit. The fact that Mr. Puig, because of his intimate and friendly relations with the deceased, did not care to charge a fee for his services, and the fact that plaintiff is the brother of the widow in community, could not have misled the executors in believing that plaintiff intended to continue to perform services gratis, because the testimony of the witnesses make it clear that he emphatically refused to do so. In our opinion, he made it plain that, while he would adhere to the original arrangement to act as one of the attorneys for the executor in the regular administration of the succession, he did not consider the Lewis lawsuit within the purview and scope of that arrangement, but outside of it, and that he expected to be paid for services in defending that suit. Having allowed plaintiff to go forward and render his services under those circumstances, the coexecutors impliedly authorized him to represent them for pay. It is said that there was no intention on the part of Mr. Nolan to authorize plaintiff to represent the executors for pay in the Lewis case, because plaintiff's sister, as widow in community, and Mr. Nolan's wife, as residuary legatee, had adverse interests. In a measure, that is true with reference to their respective claims against the estate, but no objection is made to plaintiff representing the executors in the succession proceedings without compensation. In the Lewis case there was no conflicting interest between Mrs. Marinoni and Mrs. Nolan, their interest was identical; i. e. to defeat the Lewis claim. It is only with reference to this litigation that the fee is claimed. The only remaining question is, What is a reasonable fee?

It is contended that the sum of $2,000 awarded by the trial judge is excessive, because other attorneys rendered services in connection with the case. Messrs. Gardner and Backstrom, attorneys of Mississippi, employed on the suggestion of plaintiff to brief the laws of Mississippi on the question of common-law marriage, were paid a fee of $500 by the executors for their services. One of these attorneys appeared in the district court, but did not participate in the argument. As we have said before, the other counsel permitted plaintiff to take the initiative and followed his suggestion as to the proper line of defense. Plaintiff's opinion of the law was finally adopted by this court on rehearing. Counsel for the executor admits that defending the Lewis' claim saved the estate approximately $25,000, and points out that Mrs. Lewis is now claiming, as a child of the deceased from a putative marriage, in order to minimize the effect of plaintiff's efforts. The services were rendered under the eyes of the court, and we see no reason to disturb the amount awarded by our learned brother below.

The judgment erroneously allows interest from April 20, 1932, instead of from judicial demand, and, in that respect, the decree will be amended.

For the reasons assigned, the judgment appealed from is amended by allowing legal interest from judicial demand, and, as thus amended, the judgment is affirmed; appellant to pay all costs of court.